OPINION
{¶ 1} This is an appeal taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Grange Insurance Company, is seeking the reversal of the trial court's decision to grant summary judgment in favor of appellees, Cindy Aivazis and Mariah Aivazis. For the reasons discussed herein, we hold appellees' cause of action has been extinguished by the Supreme Court of Ohio's recent holding inHedges v. Nationwide Mut. Ins. Co., 109 Ohio St.3d 70, 2006-Ohio-1926, and we therefore reverse.
 {¶ 2} Statement of Facts and Procedural History
 {¶ 3} On October 29, 1997, Mary A. Papadakis ("decedent") was killed in a motor vehicle accident after the vehicle in which she was a passenger was negligently struck by Daniel W. Haines ("tortfeasor"). The decedent was survived by her husband, four daughters, including appellee, Cindy Aivazis, and several grandchildren, including appellee, Mariah Aivazis. The tortfeasor had an automobile liability insurance policy issued by Farmers Insurance Group Companies with coverage limits of $ 100,000 per person and $ 300,000 per occurrence. The decedent was insured through an automobile policy issued by Erie Insurance Group which provided $ 250,000 in UM/UIM coverage.
 {¶ 4} On or about February 1, 2000, the Estate of Mary Papadakis accepted a $ 100,000 settlement offer from the tortfeasor's insurer. Pursuant to this settlement, the executor of the Estate, the decedent's husband ("husband"), signed a release of all claims against the tortfeasor's insurer. Appellees did not sign the release. The $ 100,000 settlement was distributed to the decedent's husband. The husband next asserted a claim for UM/UIM coverage against the decedent's insurance carrier and, on *Page 3 
January 29, 2001, the Estate of Mary Papadakis received $ 150,000 from the insurer, the maximum recoverable under the policy. The proceeds from the UM/UIM claim were distributed between the decedent's husband and four daughters. Out of this settlement, appellee, Cindy Aivazis received $ 18,750.
 {¶ 5} At the time of the decedent's death, appellees were insured under a motor vehicle liability policy issued by appellant ("Grange policy"). Subject to its terms and conditions, the policy provided UM/UIM coverage with policy limits of $ 100,000 per person. The decedent was not an insured under the Grange policy. On June 8, 2001, appellees filed a complaint against appellant for UM/UIM coverage derivative of the wrongful death of the decedent.
 {¶ 6} In their complaint, appellees sought UM/UIM benefits under the Grange policy for loss of companionship, consortium, and the like, resulting from decedent's passing. In addition to their UM/UIM claims against appellant, appellees made claims for UM/UIM benefits against other insurers pursuant to Scott-Pontzer v. Liberty Mut. Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292. These claims were ultimately dismissed in the wake of the of the Supreme Court of Ohio's release of its decision in Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-584. The only remaining claims were those asserted against appellant.
 {¶ 7} Appellees' claims against appellant were premised upon two decisions released by the Supreme Court of Ohio after the husband's settlement with the tortfeasor's insurer, viz., Moore v. StateAutomobile Ins. Co., 88 Ohio St.3d 27, 2000-Ohio-264, decided February 16, 2000, and Clark v. Scarpelli, 91 Ohio St.3d 271, 2001-Ohio-39, decided April 11, 2001. *Page 4 
 {¶ 8} In Moore, the Supreme Court of Ohio addressed whether R.C.3937.18(A), as amended by Am. Sub. S.B. No. 20 in 1994, permitted an insurer to limit UM/UIM coverage in such a way that an insured must suffer bodily injury in order to recover damages from the insurer. The amended statute at issue read, in pertinent part:
 {¶ 9} "(A) No automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 {¶ 10} "(1) Uninsured motorist coverage, which * * * shall provide protection for bodily injury or death * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death suffered by any person insured under the policy." Moore, supra, at 30.
 {¶ 11} The court determined the amended version of the statute was ambiguous because the phrase "suffered by such persons" found in section (A) could reasonably refer to "loss" and the phrase "suffered by any person insured under the policy" found in subsection (A)(1) could reasonably refer to "damages." However, neither phrase necessarily referred to "bodily injury." Given this reading, an insured did not have to sustain a bodily injury in order to suffer a "loss" or have "damages" under the statute. The Supreme Court consequently determined that "R.C.3937.18(A)(1), as amended by Am. Sub. S.B. No. 20, in 1994, does not permit an insurer to limit uninsured motorist *Page 5 
coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer."Moore, at syllabus.[1]
 {¶ 12} In light of Moore, appellees asserted they were entitled to UM/UIM coverage for their loss of companionship, et al., claims under the Grange policy because it inappropriately limited recovery to losses resulting from bodily injury.
 {¶ 13} Further, Clark, supra, held that, for purposes of setoff, the UM/UIM statute's phrase "amounts available for payment * * * means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies." Id at syllabus. Pursuant to Clark, appellees alleged they were entitled to the $ 81,250 under the Grange policy, i.e., the setoff amount available under the Grange policy in light of the $ 18,750 UM/UIM award appellee, Cindy Aivazis, received from the settlement with the decedent's insurer.
 {¶ 14} On September 16, 2005, the parties filed joint stipulations of fact.[2] On the same date, both appellant and appellees filed their respective motions for summary judgment. In its motion for summary judgment appellant argued appellees were not *Page 6 
entitled to UM/UIM benefits because their demand for coverage was untimely pursuant to the express limitation period set forth in the policy. The policy expressly provided:
 {¶ 15} "Any arbitration or suit against us will be barred unless commenced within 2 years (TWO YEARS) from the date of the accident or 1 year (ONE YEAR) after the date that you were aware, or should have been aware, of a claim for which coverage would apply whichever is later."
 {¶ 16} Appellant averred that appellees' May 30, 2001 notice of their UM/UIM claim was provided more than two years after the date of the accident (October 29, 1997) and more than one year after the February 1, 2000 settlement of the claims against the tortfeasor, i.e., the latest date on which appellees "should have been aware" of their claim for coverage. Appellant maintained that even though the holdings inMoore and Clark, read together, acted as a springboard for appellees' claim, the release of these cases did not have any bearing on the accrual date of their claim. In short, appellant maintained the date of accrual was unaffected by the fact that appellees' cause of action was not recognized under Ohio law on the date of the settlement with the tortfeasor.
 {¶ 17} Appellant also argued the Supreme Court's holding inFerrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217, barred appellees' claims owing to appellees' failure to provide timely, reasonable notice of their UM/UIM claim prejudiced appellant's right to subrogation.
 {¶ 18} Conversely, appellees argued they provided appellant notice of their UM/UIM claim within a year of their awareness of the claim (or within a year of the time *Page 7 
at which they should have been aware of their claim). In appellees' view, it was only after Clark was released on April 11, 2001, that they could have asserted their Moore claim. Because they filed their claim on June 8, 2001, appellees argued it was well within the one year window set forth in the policy. Further, appellees pointed out the Grange policy limited UM/UIM coverage to bodily injuries suffered by an insured as a result of an accident. Because Moore prohibited an insurer from restricting coverage in this manner, appellees concluded the limitation was invalid and, as a matter of law, they were entitled to UM/UIM setoff coverage pursuant to Clark[3]
 {¶ 19} On April 5, 2006, after considering the relative merits of the foregoing arguments, the trial court awarded summary judgment in appellees' favor. The court reasoned:
 {¶ 20} "* * * the policy expressly provides that a claim will not be barred so long as suit is commenced within one year from when the claimant was aware or should have been aware of the claim. It is well-established that provisions in an insurance contract reasonably susceptible to more than one interpretation must be construed strictly against the insurer and liberally in favor of the insured. * * * Here, given Defendant's acknowledgement that Plaintiffs' claims were not even viable under Ohio law until Clark was decided, it strikes the Court as abundantly reasonable to construe the date of that decision as being the first date that Plaintiffs `were aware or should have been aware' of *Page 8 
their claims. Thus, Plaintiffs' action was, in fact, commenced within the time set forth in the above policy provision." (Citations omitted.)
 {¶ 21} The court also concluded that appellees did not violate the policy's "prompt notice" requirement relating to appellant's right to subrogation because "the settlement entered into with the tortfeasor was between the tortfeasor and the Estate of Mary A. Papadakis, and not between the tortfeasor and either of the Plaintiffs." In accordance with the parties' stipulations, the trial court awarded appellant $ 81,250.
 {¶ 22} Appellant filed a timely appeal of the foregoing decision and now asserts two assignments of error for our consideration:
 {¶ 23} "[1.] The trial court erred to the prejudice of appellant Grange Mutual Casualty Company when it granted appellees' motion for summary judgment and denied appellant's motion for summary judgment.
 {¶ 24} "[2.] The trial court's entry of summary judgment in favor of appellees Cindy Aivazis and Cindy Aivazis as parent and natural guardian of her minor daughter Mariah Aivazis and its denial of the motion for summary judgment of appellant Grange Mutual Casualty Company should be reversed on the authority of Hedges v. Nationwide Mut. Ins. Co.,109 Ohio St.3d 70, 2006-Ohio-1926."
 {¶ 25} Effect of the Hedges v. Nationwide decision
 {¶ 26} We shall begin by considering appellant's second assignment of error as it is dispositive of the instant appeal. Under that assigned error, appellant argues the Supreme Court's recent decision inHedges, supra, released by the Supreme Court of Ohio on May 3, 2006, eliminates the viability of appellees' cause of action. *Page 9 
 {¶ 27} In Hedges, the decedent was killed when he was struck by a truck while riding his bicycle on January 1, 2001. The tortfeasor's insurer paid the limits of his policy and the decedent's insurer paid damages on a claim for UM/UIM coverage. The decedent's mother, Hedges, received a portion of the payments. At the time of the accident, Hedges held an automobile insurance policy and an umbrella insurance policy. Both policies provided UM/UIM coverage. The umbrella policy applied to losses covered by the insured's underlying automobile policy. The automobile insurance policy's UM/UIM provision provided that the insurer would "pay compensatory damages, including, derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured [or underinsured] motor vehicle because of bodily injury suffered by you or a relative." By the terms of Hedges' policy, the decedent was not a "relative" because he did not "regularly live in her household." Id. at ¶ 2.
 {¶ 28} Hedges proceeded to submit a claim under her automobile insurance policy, asserting that the policy covers damages she sustained from the nonphysical, personal loss she experienced resulting from her son's death. Her insurer denied the claim maintaining her alleged damages did not invoke a covered loss. Hedges subsequently filed a complaint in the Franklin County Court of Common Pleas seeking a declaration of her rights under the policies and asserting claims against the insurer for breach of contract, inter alia. Id. at ¶ 3.
 {¶ 29} The parties filed motions for summary judgment. Hedges premised her motion upon the Supreme Court's holding in Moore, supra. In opposition, the insurer asserted that, while Moore, is viable under certain circumstances, its holding interpreted the 1994 S.B. 20 amendment to R.C. 3937.18(A). Hedges' policy was signed after the *Page 10 
S.B. 20 version of R.C. 3937.18(A) had been amended by H.B. 261, effective September 3, 1997. According to the insurer, H.B. 261 was outside the scope of the Moore analysis and thus permitted an insurer to limit UM/UIM coverage to accidents in which an insured suffered bodily injury. Hedges, supra, at ¶ 4-5.
 {¶ 30} The trial court awarded summary judgment in favor of the insurer concluding the H.B. 261 amendment of R.C. 3937.18 was not subject to the holding in Moore. On appeal, the Tenth Appellate District reversed the trial court's decision holding Moore applied to the H.B. 261 amendment and therefore the insured was entitled to UM/UIM coverage. The Tenth District's holding was in conflict with the Second Appellate District's holding in Cincinnati Equitable Ins. Co. v. Wells, 2d Dist. No. 20286, 2004-Ohio-2418. A conflict was accordingly certified to the Supreme Court.
 {¶ 31} In its May 3, 2006 decision, the Supreme Court reversed the Tenth District's judgment, holding the rule announced in Moore does not apply to the version of R.C. 3937.18(A) as amended by H.B. 261.Hedges, supra, at ¶ 6-9. In short, the court stated:
 {¶ 32} "The interpretation of R.C. 3937.18(A) in Moore v. State AutoMut. Ins. Co. (2000), 88 Ohio St.3d 27, 2000-Ohio-264, 723 N.E.2d 97, applies only to the 1994 S.B. 20 version of the statute. Thus,Moore does not apply to the version of R.C. 3937.18(A) as amended by 1997 H.B. 261." Hedges, supra, at syllabus.
 {¶ 33} Although Hedges was released subsequent to the lower court's award of summary judgment in appellee's favor, it was released during the pendency of the direct appeal of the lower court's judgment. Accordingly, appellant contends the decision must be applied retroactively. *Page 11 
 {¶ 34} In response, appellees assert applying Hedges retroactively would be inappropriate because they possessed vested rights under the Grange policy upon which their cause of action was premised. In support, appellees cite Peerless Electric Co. v. Bowers (1955), 164 Ohio St.209 for the proposition that decisional law will not be applied retroactively "where contractual rights have arisen or vested rights have been acquired under the prior decision." We disagree.
 {¶ 35} Courts have determined that the exception set forth above "has not been recognized * * * in insurance cases where the parties are relying upon R.C. 3937.18." Finneran v. Bestor (Nov. 2, 1995), 8th Dist. No. 68774, 1995 Ohio App. LEXIS 4880, citing, Nationwide Ins. Co. v.Tobler (1992), 80 Ohio App.3d 560; see, also, Adams v. Osterman, 10th Dist. No. 03AP-547, 2004-Ohio-1412, at ¶ 10. Quoting Tobler, Bestor
noted: "We do not find that this exception applies since the contractual rights of the parties were always subject to the provisions of R.C.3937.18 and the policies underlying it. * * *" Where the Supreme Court, in interpreting R.C. 3937.18, has determined a claimant's cause of action is invalid under the relevant version of the statute, the claimant cannot assert her rights had vested simply because she brought the claim prior to the decision in question. Appellees' argument is unpersuasive.
 {¶ 36} Appellees next assert the instant matter is analogous toSheaffer v. Westfield Ins. Co., 110 Ohio St.3d 265, 2006-Ohio-4476, wherein the Supreme Court of Ohio declined an invitation to retroactively apply its decision in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849. We believe Sheaffer is readily distinguishable from the instant matter. *Page 12 
 {¶ 37} In Sheaffer, the decedent was killed in an automobile accident by an uninsured motorist. At the time of her death, the decedent's employer had a motor vehicle liability policy through Westfield Insurance Company and a commercial general liability and umbrella policy issued by Argonaut Great Central Insurance Company. The decedent's husband, et al., filed suit against Westfield and Argonaut to recover benefits under their UM/UIM coverage pursuant to Scott-Pontzer v.Liberty Mut. Fire. Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292. Westfield entered into a settlement agreement with the plaintiffs; however, Argonaut disputed the plaintiffs' entitlement to UM/UIM coverage. Both plaintiffs and Argonaut moved for summary judgment. While Argonaut continued to dispute coverage, the parties agreed to stipulate damages at $ 525,000.
 {¶ 38} On August 15, 2002, the trial court granted the plaintiffs' summary judgment motion. The court declared the plaintiffs were insured under the UM/UIM coverage in the commercial general liability policy and the umbrella policy as a matter of law and awarded them the full amount of the stipulated damages. Argonaut appealed.
 {¶ 39} On September 10, 2003, the Fifth Appellate District determined that Argonaut was not liable under the commercial general liability policy but was still liable under the umbrella policy. On October 15, 2003, on remand, the trial court modified its original determination to reflect the appellate court's September 10, 2003 mandate.
 {¶ 40} On October 24, 2003, Argonaut filed a motion in support of acceptance of a discretionary appeal with the Supreme Court of Ohio. On January 21, 2004, the Court declined to accept jurisdiction.
 {¶ 41} In the meantime, on November 5, 2003, the Supreme Court of Ohio decided Westfield Ins. Co. v. Galatis, limiting the scope of UM/UIM coverage under *Page 13 
particular policy language to employees acting within the scope of their employment. Id. at ¶ 62.
 {¶ 42} While simultaneously appealing the appellate court's September 10, 2003 judgment to the Supreme Court, Argonaut appealed the trial court's October 15, 2004 decision to the Fifth Appellate District. The appellate court affirmed the trial court's October 15, 2004 decision and, on May 2, 2005, the Supreme Court accepted jurisdiction over the matter recognizing the certified conflict. In the discretionary appeal, Argonaut argued that Galatis should have been applied retroactively to foreclose liability because its appeal was pending at the timeGalatis was decided. The Supreme Court rejected Argonaut's argument. In the court's view, the legal issues that determined the case were terminated on January 21, 2004, when it denied jurisdiction to review the Fifth Appellate District's September 10, 2003 holding. In effect, once the court denied jurisdiction over the issue of whether the plaintiffs were insured under the umbrella policy, the appellate court's determination that the plaintiffs were entitled to a $ 525,000 award of damages became the law-of-the-case. Id. at ¶ 12. Therefore, the court held: "[w]hile Argonaut's argument [regarding the retroactive application of Westfield] is generally correct, it does not apply to the particular facts of this case. When we denied jurisdiction overSheaffer I, that decided the issue and prevented any retroactive application of Galatis to this case." Id. at ¶ 13.
 {¶ 43} Sheaffer stands for the proposition that once the Supreme Court denies jurisdiction over a discretionary appeal, that issue is settled and final pursuant to the law-of-the-case doctrine. Id. at syllabus. The law-of-the-case doctrine does not apply to the instant matter as it is currently on direct appeal, i.e., there has been no ruling by a *Page 14 
superior court validating the lower court's ruling such that it would stand as the "law-of-the-case." In effect, the rule announced inSheaffer does not necessarily prohibit the retroactive application of a Supreme Court decision pertaining to the interpretation of a statute which has been released during the pendency of an appeal of right. The unique procedural posture of Sheaffer dictated the court's determination. We therefore hold that Sheaffer does not apply to the instant matter and therefore has no impact upon whether Hedges should apply retroactively.
 {¶ 44} In Ohio, "a decision of the Supreme Court interpreting a statute is retrospective in its operation because it is a declaration of what is and always was the correct meaning or effect of the enactment."Anello v. Hufziger (1988), 48 Ohio App.3d 28, citing Peerless ElectricCo. supra; see, also, Thacker v. Bd. Of Trustees of Ohio StateUniv. (1971), 31 Ohio App.2d 17, 23, citing, Milkovich v.News-Herald (1980), 46 Ohio App.3d 20, 23; reversed on other grounds,Milkovich v. Lorain Journal Co. (1990), 110 S.Ct. 2695. (noting stare decisis requires a court to follow the authority of a superior court which has decided the issue under review).
 {¶ 45} It is well established that the statutory law in effect at the time of the parties entering into a contract controls the rights and duties of the parties to the contract. Ross v. Farmers Ins. Group ofCos., 82 Ohio St.3d 281, syllabus, 1998-Ohio-381. Here, the insurance contract under which appellees filed their claim was entered into on October 22, 1997, some forty-nine days after H.B. 261 went into effect. The UM/UIM provision within the policy limited damages to those which the insured is legally entitled to for "Bodily injury * * * caused by an accident." (Emphasis sic.) Because the contract at issue is governed by the H.B. 261 amendment to R.C. 3937.18, the limitation *Page 15 
requiring an insured to suffer bodily injury before being entitled to damages is valid and enforceable under Hedges. Because the instant matter is indistinguishable from Hedges, we must conclude appellees'Moore claim is consequently not cognizable.
 {¶ 46} Appellant's second assignment of error is sustained.
 {¶ 47} Notwithstanding the foregoing conclusion, the trial court's analysis pertaining to the limitations provision within the Grange policy was both sound and well articulated. Appellant challenged the trial court's determination on this issue under its first assignment of error. However, had this court been presented with the issue in apre-Hedges universe, the trial court's conclusion would stand as a matter of law. Specifically, the limitations period within the Grange policy provided that a claim would not be barred to the extent suit is commenced within one year after the claimant was aware, or should have been aware, of the claim. As the trial court duly noted, where provisions in an insurance contract are reasonably susceptible to more than one interpretation, they will be strictly construed against the insurer and liberally in favor of the insured. See King v. NationwideIns. Co. (1988), 35 Ohio St.3d 208, syllabus.
 {¶ 48} In relation to this issue, appellant vehemently argues that the date of a "favorable change in the law" cannot be deemed the date on which a claim accrues. However, the limitations language in the Grange policy, drafted by appellant, reasonably affords a claimant the ability to make such an assertion. Neither party disputed that, prior toClark, appellees had no cause of action to assert and therefore the release of Clark marked the first date on which appellees were aware (or should have been aware) of their claims. Given the express language of the policy, it is eminently reasonable to construe the date of the release of Clark as the point at which appellees should have *Page 16 
been aware of their claims. Appellees commenced their action less than two months after the release of Clark and were squarely within the limitations period provided in the Grange policy. In light ofHedges, however, the foregoing is little more than a point of clarification.
 {¶ 49} The appeal before this court is an instance of the general instability inhering Ohio's UM/UIM law. R.C. 3937.18, in its seemingly innumerable guises, has been, is, and will likely continue to be, replete with inconsistencies in word and application. Statutes generally exist to codify and thereby clarify and stabilize principles of law and policy. Ohio's UM/UIM law fails miserably in this regard: It is in a continual state of revision which affords consumers and attorneys virtually no predictability. The matter currently before us is an archetypal instance of the overall confusion created by the continual revisions and consequent hermeneutical morphs within Ohio's UM/UIM jurisprudence. As such, litigants moving forward under any of the various versions of R.C. 3937.18 should always pay heed: A valid cause of action one day, may be taken away on the next.
 {¶ 50} Because Hedges may be properly applied retroactively, we hold appellees' Moore claim cannot survive the application of the rule set forth in Hedges. The decision of the lower court is accordingly reversed and judgment is entered in appellant's favor as a matter of law.
COLLEEN MARY OTOOLE, J., concurs in judgment only,
JUDITH A. CHRISTLEY, J., Ret., Eleventh Appellate District, sitting by assignment, concurs.
[1] The Court's holding in Moore was foreshadowed by its earlier holding in Sexton v. State Farm Mut. Auto. Ins. Co. (1982),69 Ohio St.2d 431. In Sexton, the Court assessed whether an insurer may condition UM/UIM coverage upon the insured suffering a bodily injury. The 1982 version of R.C. 3937.18(A) that applied in Sexton provided: "No automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless an equivalent amount of coverage for bodily injury or death is provided therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." Id. at 433-434. The Court determined that because former R.C. 3937.18 did not specify that an insured must sustain bodily injury in order to recover damages, any such limitation in a UM/UIM endorsement was void. Sexton, supra, at 437.
[2] It bears noting that the parties stipulated to the following: "Prior to the Supreme Court decisions in Moore and Clark, Grange would have denied that Cindy Aivazis and/or Mariah Aivazis were entitled to recover underinsured motorist benefits from the Grange policy." While courts are ordinarily bound by the factual stipulations of litigants, courts are not bound in their determination of questions of law. See, e.g., Ish v. Crane (1862), 13 Ohio St. 574. The foregoing stipulation, while suggesting appellees are entitled to recovery under Moore andClark, is not a specific admission of coverage. Rather, when read in relation to the remaining stipulations and the record as a whole, the stipulation represents a concession that, in light of Moore andClark, appellees have an arguable claim for coverage under the Grange policy.
[3] In their motion for summary judgment, appellees acknowledged thatMoore addressed the S.B. 20 amendment to the UM/UIM coverage statute. However, appellees pointed out that several decisions from the Fifth Appellate District had held that Moore applied to the H.B. 261 version of R.C. 3937.18. See Yates v. Allstate Ins. Co., 5th Dist. No. 04 CA 39,2005-Ohio-1479; see, also, Bernabei v. The Cincinnati Ins. Cos., 5th Dist. Nos. 2002CA00078 and 2002CA00073, 2004-Ohio-4939. Accordingly, appellees argued they were entitled to coverage under the policy at issue. *Page 1