**KEMO, Appellee,**

v.

**CITY OF ST. CLAIRSVILLE, Appellant.**

[Cite as *Kemo v. St. Clairsville* (1998), 128 Ohio App.3d 178.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 96–BA–78.

Decided June 4, 1998.

---

*Patrick S. Cassidy,* for appellee.

*Charles H. Cooper,* for appellant.

Cox, Judge.

This timely appeal arises from a December 4, 1996 judgment of the Belmont County Common Pleas Court granting plaintiff-appellee Jack Kemo back wages in the amount of $45,212.79 upon finding that defendant-appellant city of St. Clairsville had discriminatorily refused to offer him employment because of a handicap pursuant to R.C. 4112.02(A). Though the parties stipulated that appellee did not in fact have a disability, the trial court concluded that appellee

was handicapped as a matter of law pursuant to R.C. 4112.01(A)(21) because appellant "regarded" him as having a handicap.

In October 1992, appellant placed a job notice in the local newspaper for an "entry level employee in the water/wastewater plant." The ad required that applicants possess a minimum of an associate degree in civil engineering technologies and live no further than twenty minutes from St. Clairsville, Ohio. After responding to the ad in November 1992, appellee was granted an initial interview with the superintendent of the water department, Richard Bauer, and a second interview with the director of public services, Dennis Bigler.

The position for which appellee was being considered was a "hybrid" job consisting primarily of general labor duties and inspecting duties on an as-needed basis. The record reveals that starting pay for the hybrid position was $7.70 an hour, plus full medical benefits, and was to be covered by a collective bargaining agreement upon satisfactory completion of a probationary period. An official job posting dated December 12, 1992 described the labor duties as "typical duties in the water/wastewater department." A review of the record indicates that both Bauer and Bigler considered appellee qualified to execute the inspection duties.

In December 1992, the city council approved an offer of employment to appellee, contingent upon his submitting to a routine medical examination. That the contingent offer was orally presented to appellee as such does not appear to be disputed.

Prior to appellee's taking the required medical exam, Bigler was informed by one of appellee's prior employers during a routine reference check that appellee had suffered a back injury several years earlier that caused him to take time off for treatment and rehabilitation. In a January 27, 1993 report prepared as a result of appellee's medical examination, appellant's examining physician, Dr. Murray, noted that appellee disclosed a prior herniated disk injury, that appellee had a "somewhat rigid lumbar spine with loss of normal lumbar lordosis," and that his "forward flexion is to only 45 degrees." Though Dr. Murray made no specific conclusory statements as to the aforementioned medical notations, he did write in an attached letter dated January 29, 1993 that appellee "appears currently to be well and denies any back problems. Although recurrence remains a possibility, he should be able to perform routine activities."

On or about February 10, 1993, Bigler informed appellee that he would not be hired for the "hybrid" position. Bigler, however, proposed that appellee consider providing inspection services for the city as an independent contractor on an "as needed" basis. The record indicates that both parties understood at the time of this discussion that the starting pay for the inspector's position was $12 an hour, no benefits were provided, and appellee would not be covered by a collective bargaining agreement. Both parties to this discussion also agree that there was

no discussion as to the number of hours appellee would be guaranteed as an inspector or the potential for such a position developing into full-time employment. Though the city council had authorized a hiring to fill the "hybrid" position, it had not authorized the hiring of an inspector. As a postscript, the record reveals that the "hybrid" position remained unfilled at the time of trial.

Bigler testified that his decision to rescind the contingent offer of employment was made in consideration of a combination of factors, including appellee's prior back injury, his layman's assessment of Dr. Murray's medical report, the unique physical demands placed upon laborers in the water/wastewater department, his personal knowledge of the burden that workers' compensation and insurance claims place upon an employer and appellee's apparent interest and skill in the inspecting duties.

Appellee, however, testified that Bigler told him that the decision was primarily based upon a discussion he had with a workers' compensation consultant who, upon reviewing Dr. Murray's report, opined that a back injury claim would cost the city between $30,000 and $50,000.

Appellee subsequently forwarded to Bigler a letter from Dr. Marquart dated March 2, 1993. Dr. Marquart, the physician who initially treated appellee's back injury in 1990, stated that appellee had completed his physical therapy program and that appellee's limited extension and flexion did not pose "any type of a restriction on his activities in any way whatsoever." Dr. Marquart also recommended, upon review of *appellee's 1991 functional capacity evaluation*, that appellee was "capable of doing any activity he so desired."

The record also includes, however, a prior draft of Dr. Marquart's letter, dated February 23, 1993, which is substantially similar to the March 2 letter, but which also included an additional sentence stating, *"At the present time,* strictly measuring his back, he only has a 35% flexion * * *."

Appellee also submitted a personal letter to Bigler, dated March 3, 1993, indicating his continued interest in the full-time city employee position that appellant had "offered" and he had "accepted" in December 1992. Appellee also expressed his disinterest in the nonemployee inspector position by virtue of its not being comparable to the full-time position, noting that he would have to seek legal advice if appellant did not allow him to begin full-time work as an employee of the water department.

Appellee filed the underlying complaint on December 12, 1994, alleging that appellant had violated R.C. 4112.05(B) by denying him employment on the basis of a perceived disability. After a bench trial was had on October 22, 1996, the trial court entered a final judgment, including findings of fact and conclusions of law, on December 4, 1996.

The trial court found, as a matter of fact, that appellee was hired on Feb. 1, 1993, the labor duties attached to the hybrid job were general and routine, Dr. Murray's report did not in any way suggest that Kemo could not perform the essential functions of the hybrid job, appellant did not hire appellee for the hybrid position because it perceived appellant as having a physical impairment that substantially limited one or more major life functions, and appellee had no physical limitation that would have made him unable to perform all the duties and essential functions of the hybrid job.

The trial court concluded, as a matter of law, that appellee was a "handicapped person" as defined in R.C. 4112.01(A)(21), that appellant unlawfully discriminated against appellee pursuant to R.C. 4112.02(A), and that Bigler's alternate offer to have appellee perform inspector duties as an independent contractor on an as-needed basis was not comparable to the "hybrid" position because the offer was not approved by council as required by R.C. 735.05.

Appellant filed this timely appeal on December 31, 1996.

Appellant presents five assignments of error in its appeal. Because the first and second assignments of error are interrelated, we shall address them concurrently. Appellant's first and second assignments of error allege:

"The trial court erred in concluding that Jack Kemo is a 'handicapped person' as defined in Ohio Revised Code § 4112.01(A)(21).

"The trial court erred as a matter of law in concluding that defendant regarded plaintiff as having a handicap."

R.C. 4112.02 provides in part:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * handicap * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

The trial court's determination as to what appellant *regarded* is a question of fact that will not be reversed unless we find such a determination clearly erroneous and unsupported in the record. However, the definition of *handicapped* is a matter of statutory construction, subject to de novo review as a matter of law:

"In order to establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in

question." *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus.

■ "Once the plaintiff establishes a prima facie case of handicap discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken." *Hood, supra,* at 302, 658 N.E.2d at 741.

■ The employer's burden is only one of production, satisfied upon the presentation of an explanation legally sufficient to justify judgment for the employer. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 664, 591 N.E.2d 752, 752, paragraph two of the syllabus, citing *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207

■ "[I]f the employer establishes a nondiscriminatory reason for the action taken, then the employee or prospective employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." *Hood* at 302, 658 N.E.2d at 742.

R.C. 4112.01(A)(21) provides:

" 'Handicapped person' means a person with a handicap."

R.C. 4112.01(A)(13) provides:

" 'Handicap' means a physical or mental impairment that *substantially* limits one or more *major life activities,* including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; *or being regarded as having a physical or mental impairment."* (Emphasis added.)

In determining whether the trial court erred in concluding that appellee was handicapped, we address (1) whether appellee satisfied his burden in establishing a prima facie case that appellant rescinded the contingent offer of employment because it regarded appellee as having a physical impairment that substantially limited one or more major life activities; (2) if appellee established a prima facie case, whether appellant satisfied its burden of production in presenting some legitimate, nondiscriminatory reason for rescinding the contingent offer; and (3) if appellant satisfied its burden of production, whether appellee satisfied his burden in proving that these otherwise legitimate reasons were merely pretextual.

Appellee does not challenge that an employer may make an offer of employment contingent upon the applicant's submitting to a medical examination for the purpose of evaluating the applicant's ability to perform the essential duties of the specific employment for which he is being considered, where such a requirement

is routinely and nondiscriminatorily applied as a matter of policy. We accept for purposes of this appeal that the requirement of a medical evaluation as a condition of employment was a proper and nondiscriminatorily applied policy.

R.C. 4112.02(L) provides:

"Nothing in divisions (A) to (E) of this section shall be construed to require a handicapped person to be employed or trained under circumstances that would significantly increase the occupational hazards affecting either the handicapped person, other employees, the general public, or the facilities in which the work is to be performed, or to require the employment or training of a handicapped person in a job that requires the handicapped person routinely to undertake any task, the performance of which is substantially and inherently impaired by the handicapped person's handicap."

The language of R.C. 4112.02(L) reflects the General Assembly's contemplation of circumstances where an employer could properly deny employment to an individual on the basis of a medical evaluation without regarding the applicant as being handicapped. Without such a construction, every individual who was denied employment subsequent to a pre-employment medical evaluation would be considered handicapped as a matter of law. As a matter of public policy, such a construction is simply unmanageable.

We therefore conclude that the threshold before which an employer may legitimately and justifiably deny an individual employment based upon a medical evaluation and after which a subsequent denial of employment rises to the level of discriminatory conduct due to an actual or perceived handicap is crossed where the impairment upon which the decision is allegedly based would, if it in fact existed, substantially limit one or more major life activities.

Factors to be considered in determining whether the impairment substantially limits one or more life activities include the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. Section 1630.2(j)(2), Title 29, C.F.R.

In the present matter, the record clearly indicates that appellant regarded appellee's physical capabilities to be limited in some way. It is just as clear that an adverse employment action was taken by appellant, at least in part, because of appellee's perceived impairment. Though we accept for purposes of establishing a prima facie case the trial court's finding that appellee was capable of safely and substantially performing the specific tasks of the "hybrid" position, we save for later an analysis of whether appellant would be justified in concluding under the circumstances that employing appellee in the "hybrid" position would serve to significantly increase the occupational hazards affecting either him, other employ-

ees, or the general public. Therefore, our analysis of whether appellee satisfied his burden in establishing a prima facie case of handicap discrimination focuses on the degree of impairment appellant regarded appellee as having, and whether such an impairment, if it in fact existed, would substantially limit one or more major life activities. Based upon our review of the record, we conclude that the specific facts of the case do not support a conclusion that appellee satisfied this burden.

■ Though R.C. 4112.01(A)(13) expressly includes "work" as a major life activity, we must construe the term within the context of the statute as covering the most basic and fundamental of physical *tasks* in general, not specific *jobs* with specific *employers*. The record reveals that appellant's concern as to appellee's physical limitations arose from information acquired via Dr. Murray's report and letter and a routine reference check with a prior employer. The record does not support a finding that the cumulative effect of these communications could lead a reasonable person to conclude the degree of appellee's impairment was of such nature and severity, or of such duration or expected duration, or of such permanent or long-term impact as to render him substantially limited in performing routine labor duties.

That appellant regarded appellee's physical limitations as unsuited for this specific job and that it subjectively believed that the specific duties associated with the job had the potential to cause a recurrence of appellee's back injury are insufficient to support a finding that appellant regarded appellee as substantially limited in a major life activity. Appellee's burden is to establish that appellant regarded him as substantially limited in his ability to perform such fundamental and routine tasks as are necessary to exist in everyday life, not merely to establish that appellant regarded him as limited in his abilities to perform the specific tasks associated with a specific job. In consideration of the description of the duties associated with the "hybrid" position, discussed above, and Bigler's proposal that appellee perform inspection duties on an as-needed basis, we conclude that appellee did not satisfy the burden necessary to establish a prima facie case of handicapped discrimination.

■ Even if we accept *arguendo* that appellee did satisfy his initial burden, the burden would then shift to appellant to produce some legitimate, nondiscriminatory reasons for its action legally sufficient to justify judgment in its favor. As noted above, Bigler testified that his decision to rescind the job offer was based upon his assessment of several factors, including appellee's prior back injury, his layman's assessment of Dr. Murray's medical report, the unique physical demands placed upon laborers in the water/wastewater department, his personal knowledge of the burden workers' compensation claims place upon an employer, and appellee's apparent interest and skill in the inspecting duties. The record

also includes testimony that some of the duties associated with the "hybrid" position were not so routine, such as climbing down and up dark, wet manholes, having to bend within the small confines of the manhole, and having to lift materials overhead within that restricted area. Based upon these specific facts of record, we cannot find that employer's stated reason for rescinding the contingent offer was a pretext for impermissible discrimination.

Having concluded that appellee failed to establish that he was a "handicapped person" as defined in R.C. 4112.01(A)(21), we also conclude that the trial court erred as a matter of law in concluding that defendant regarded plaintiff as having a handicap.

For the reasons set forth above, we find appellant's first and second assignments of error to be with merit.

Appellant's third assignment of error provides:

"The trial court erred in holding that the job defendant offered to plaintiff when it withdrew an earlier conditional job offer was not comparable to the first position offered for purposes of tolling or reducing back wages."

In light of our discussion addressing appellant's first and second assignments of error, we find it unnecessary to address the comparable nature of the two offers. Having concluded that appellant was not bound to employ appellee pursuant to R.C. 4112.02(A), the similarity or difference of the two offers is immaterial, as they are legally independent of each other. We therefore find appellant's third assignment of error irrelevant.

Since appellant's fourth and fifth assignments of error relate to the calculation and amount of damages awarded by the trial court, we shall dispose of them together. Appellant's fourth assignment of error alleges:

"The trial court erred in holding that plaintiff is entitled to back pay beyond the date he voluntarily quit his employment with Demand Side Resources."

Appellant's fifth assignment of error alleges:

"The trial court's award of back wages in the amount of $45,212.79 is not supported by the record."

We have already concluded that appellant was not bound to employ appellee. We also conclude that appellee failed to establish that he was injured as a result of appellant's conduct. Having failed to establish an injury, a discussion of damages is moot. Appellant's fourth and fifth assignments of error are therefore moot.

For the reasons set forth above, the judgment of the trial court is reversed. Judgment for appellant.

*Judgment reversed.*

GENE DONOFRIO, P.J., and VUKOVICH, J., concur.