CUNNINGHAM, Appellant,

v.

STEUBENVILLE ORTHOPEDICS AND SPORTS
MEDICINE, INC., et al., Appellees.

[Cite as *Cunningham v. Steubenville Orthopedics & Sports
Medicine, Inc.*, 175 Ohio App.3d 627, 2008-Ohio-1172.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 07–JE–23.

Decided March 17, 2008.

628

630

Bachmann, Hess, Bachmann, & Garden, P.L.L.C., and David L. Delk Jr., for appellant.

Costa D. Mastros, for appellees.

———————

DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant, Marianne Cunningham, appeals from a Jefferson County Common Pleas Court judgment granting summary judgment in favor of defendants-appellees, Steubenville Orthopedics & Sports Medicine, Inc. ("Steubenville Orthopedics") and Kumar Amin, M.D.

{¶ 2} Appellant worked as an x-ray technician in the office of Steubenville Orthopedics and Dr. Amin. Whether these appellees were appellant's employer is a central issue in this case. Appellees directed appellant's day-to-day work activities. However, Health Management Resources, Inc. ("HMRI") issued appellant's paychecks and paid for her unemployment and workers' compensation insurance.

{¶ 3} Appellant was injured at work on August 20, 2004. She filed a workers' compensation claim, which was allowed by the Industrial Commission. Her allowed injury was for a lumbar sacral sprain and a contusion of her right knee. The Industrial Commission found HMRI to be appellant's employer. According to a letter written by HMRI's president to appellant, appellant was employed by HMRI to serve as an x-ray technician for Steubenville Orthopedics.

{¶ 4} Appellant continued to work after her injury. But on or about March 29, 2005, appellant became unable to work due to pain that she alleged was caused by the previous work injury. Appellant received workers' compensation for the period of March 29 to May 2, 2005. A workers' compensation hearing officer determined that appellant's inability to work was due to her August 2004 work injury.

{¶ 5} On April 26, 2005, appellant informed appellees that she would be able to return to work on May 2, 2005.

{¶ 6} On April 27, 2005, appellant received a certified letter from HMRI's president. The letter stated that appellant was employed by HMRI as an at-will employee to serve as the x-ray technician for appellees. It then informed her that she was being reclassified to "layoff" status.

{¶ 7} Appellant filed a complaint against Steubenville Orthopedics, Dr. Amin, and HMRI, raising four claims: (1) the defendants discharged appellant because she filed a workers' compensation claim in violation of R.C. 4123.90, (2) the defendants regarded appellant as having a disability and discharged her without

just cause in violation of R.C. 4112.02, (3) the defendants discharged appellant in violation of public policy because she filed a workers' compensation claim, and (4) the defendants discharged appellant in violation of public policy because they perceived her as having a disability.

{¶ 8} Appellant later dismissed her case against HMRI because she and HMRI reached a settlement.

{¶ 9} Appellees filed a motion for partial summary judgment and then a subsequent motion for summary judgment on all counts. They alleged that HMRI was appellant's employer and, therefore, they were not responsible for her discharge. They also argued that even if they could be found to be appellant's employers, summary judgment was still warranted. Appellant also filed a motion for partial summary judgment on the issue of liability.

{¶ 10} The trial court granted appellees' motion for summary judgment. The court found that appellant was an employee of HMRI and not of Steubenville Orthopedics or Dr. Amin. Therefore, the court found that summary judgment was proper. The court also stated that during oral arguments on the motion, appellant conceded that Dr. Amin was not a proper party under counts one and two, the statutory claims, and agreed that Dr. Amin should be dismissed from those counts. Furthermore, the court went on to find that appellant had not set forth any facts that would lead reasonable minds to find that appellees had engaged in a retaliatory discharge or in a wrongful termination of appellant. In a separate judgment entry, the court denied appellant's motion for partial summary judgment.

{¶ 11} Appellant filed a timely notice of appeal on May 23, 2007. She appeals only from the trial court's judgment granting summary judgment in favor of appellees and does not appeal from the court's denial of her summary judgment motion.

{¶ 12} Appellant raises two assignments of error, which state:

{¶ 13} "The lower court in its May 2, 2007 nunc pro tunc journal entry committed error when it awarded summary judgment to defendant/appellee Steubenville Orthopedics and Sports Medicine ('Steubenville Orthopedics').

{¶ 14} "The lower court in its May 2, 2007 nunc pro tunc journal entry committed error when it awarded summary judgment to defendant/appellee Kumar Amin, M.D."

{¶ 15} Initially, it should be noted that appellant attached several uncertified and incomplete depositions to her motion for summary judgment. There is no indication that appellant filed the actual certified depositions with the trial court, nor did she file them with this court. Additionally, both parties attached various documents to their motions for summary judgment/responses, which are not

proper summary judgment evidence. However, both parties rely on and cite the deposition excerpts and other documents. Civ.R. 56(C) provides:

{¶ 16} "Summary judgment shall be rendered forthwith if the *pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact,* if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." (Emphasis added.)

{¶ 17} Since the depositions were never actually filed in the trial court, they are not proper summary judgment evidence. Additionally, the other documents were simply attached to the parties' motions/responses. However, it is within the trial court's discretion to consider nonconforming summary judgment evidence when there is no objection. *Bell v. Holden Surveying, Inc.,* 7th Dist. No. 01–AP–766, 2002-Ohio-5018, 2002 WL 31115653, at ¶ 22. It appears from the trial court's judgment entry that it considered all of the evidence the parties attached to their motions and responses regardless of whether it was proper summary judgment evidence. Furthermore, both parties relied on this evidence and voiced no objections. Therefore, we too will consider the deposition excerpts and other evidence despite their noncompliance with Civ.R. 56(C).

{¶ 18} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists, and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can conclude only that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 19} Appellant addresses her assignments of error by breaking her argument down into three issues. These issues will be addressed individually. Appellant's first issue states:

{¶ 20} "The trial court committed error when it determined that no genuine issue of fact existed as to the identity of the appellant's employer."

{¶ 21} To rebut appellees' contention that HMRI was appellant's employer and they were not, appellant relied on HMRI's denials to requests for admissions and

answers to interrogatories, as well as on the deposition testimony of HMRI's president, Richard DeLuca. In these items, HMRI denied that it was appellant's employer. Without specifically stating that it was doing so, the trial court appears to have determined that appellant could not use these evidentiary materials in support of her case because HMRI is no longer a party to this lawsuit.

{¶ 22} Appellant argues that this evidence was proper summary judgment evidence, regardless of the fact that she had settled with HMRI and dismissed it from the case. She asserts that this evidence created a genuine issue of material fact as to who her true employer was.

{¶ 23} In response, appellees argue that Dr. Amin never employed appellant in his personal capacity. In support of their contention, appellees rely on Dr. Amin's affidavit. Dr. Amin stated that he is a shareholder, officer, and employee of Steubenville Orthopedics. He further stated that he never personally employed appellant to work for him. And he stated that all issues relating to his right to practice medicine pass through Steubenville Orthopedics and not through him personally.

{¶ 24} Appellant did not present any evidence to rebut these statements by Dr. Amin or to show that Dr. Amin employed her in his personal capacity. Thus, summary judgment was proper in favor of Dr. Amin.

{¶ 25} But the issue as to Steubenville Orthopedics is not that simple.

{¶ 26} In his deposition, DeLuca identified an employment application that HMRI had on file for appellant. He stated that when a medical practice informs HMRI that it is going to hire a new employee, HMRI requests that the new employee complete an application so that HMRI has a document on file to process the payroll. DeLuca also identified an HMRI confidentiality agreement signed by appellant. Finally, and most important, DeLuca testified regarding the April 27, 2005 letter that he sent to appellant. The letter is addressed to appellant and states:

{¶ 27} "As you are aware, you have been employed through Health Management Resources 'at will' to serve as the X-ray Technician for Steubenville Orthopedics and Sports Medicine. While your payroll management, any benefits, and other payroll-related services have been provided by Health Management Resources, your day-to-day work assignment has been with Dr. Amin and his medical practice. Accordingly, you are assigned 'at will' to that practice and your wage rate, benefit levels, vacation and sick benefits, and other aspects of your employment are determined by that practice.

{¶ 28} "After multiple discussions with Dr. Amin in recent days and weeks, it became apparent that in your absence, Dr. Amin needed to secure the services of someone to perform the technical duties relating to the X-ray service within his office. Upon securing such technical support on a part time basis similar to the schedule that you worked, Dr. Amin has advised Health Management Resources that at [the] time, these other arrangements are adequate.

{¶ 29} "Health Management Resources, on the other hand, is an administrative support service organization and does not utilize the skills of an X-ray Technician within the administrative functions of our business. Accordingly, you are hereby notified that you are being re-classified to 'layoff' status. You are *not* being terminated at this time and should a position open up either at Dr. Amin's office or other medical offices who work with Health Management Resources, you will be considered for those positions."

{¶ 30} DeLuca stated that although he used the term "layoff" in the letter, he knew that appellant was actually being terminated.

{¶ 31} In addition to these documents, appellees also presented a document from appellant's workers' compensation hearing where HMRI was treated as her employer. And DeLuca testified that he attended appellant's workers' compensation hearings.

{¶ 32} Finally, Georgeanna Hasley, Dr. Amin's office manager, stated in her deposition that HMRI employed her and had employed appellant.

{¶ 33} While this evidence indicates that HMRI was appellant's employer, other evidence exists that seems to create a genuine issue of material fact on this question as it pertains to Steubenville Orthopedics.

{¶ 34} In his deposition, DeLuca stated that HMRI was simply the payroll agent for appellees. He further stated that HMRI undertook no supervision of appellees' employees. DeLuca stated that HMRI took appellees' employees and put them on HMRI's payroll and then paid unemployment and workers' compensation insurance for those employees.

{¶ 35} DeLuca also testified regarding a document entitled "Staff Leasing Protocols," which HMRI provided to all physicians who had a relationship with HMRI. He stated that this document provided that HMRI would terminate an employee working at Steubenville Orthopedics only if Dr. Amin requested it. However, this document did not refer to any specific parties.

{¶ 36} DeLuca further stated that he provided the termination notice to appellant at Dr. Amin's request. He stated that Dr. Amin had replaced appellant and did not want her back at his practice. DeLuca further stated that HMRI did not hire appellant, it did not manage appellant, it did not assign her, it did not

direct her day-to-day activities, and it did not set her wage. For all these reasons, DeLuca stated that appellant was not HMRI's employee.

{¶ 37} Furthermore, as to appellant's workers' compensation claim, DeLuca stated that the only reason HMRI was considered appellant's employer was because she was under HMRI's workers' compensation insurance plan.

{¶ 38} DeLuca also reconfirmed the answers he gave to interrogatories. He stated that HMRI's sole function as it applied to appellees was to provide payroll and administrative functions for their employees. DeLuca stated that even though HMRI put appellees' employees on its payroll, appellant and others like her were still appellees' employees. And DeLuca stated that HMRI did not determine the terms and conditions of appellant's employment.

{¶ 39} Additionally, while Hasley stated that HMRI was hers and appellant's employer, she also stated that Dr. Amin interviewed appellant before she was hired.

{¶ 40} And in her initial claim-information report for workers' compensation, appellant listed Steubenville Orthopedics as her employer. Thus, before an issue arose concerning who employed her, appellant believed that Steubenville Orthopedics was her employer.

{¶ 41} Given the above evidence, a genuine issue of material fact exists as to who was appellant's true employer. We must construe the above evidence in the light most favorable to appellant. In doing so, there is a question whether HMRI or Steubenville Orthopedics was appellant's true employer. While HMRI issued appellant's paychecks and handled her workers' compensation issues, it did not direct her daily work activities, set her wage, or hire her. Most important, HMRI did not make the decision to terminate appellant's employment. It simply carried out appellees' wishes on this matter.

{¶ 42} As stated above, however, appellant did not present any evidence to rebut Dr. Amin's statements in his affidavit that he did not employ appellant in his personal capacity. Thus, summary judgment in favor of Dr. Amin was proper.

{¶ 43} Thus, appellant's first issue has merit as it relates to Steubenville Orthopedics, but it does not have merit as it relates to Dr. Amin.

{¶ 44} Appellant's second issue states:

{¶ 45} "The trial court committed error when it ruled that the appellees were entitled to summary judgment as to Counts I and III of the Complaint."

{¶ 46} Here, appellant argues that summary judgment was improper on her retaliatory-discharge claims. In support, appellant relies on *Coolidge v. River-*

*dale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, at ¶ 46, where the Ohio Supreme Court held:

{¶ 47} "In our opinion, the policy of protection embodied in the Workers' Compensation Act can be effectuated only if an employer is not permitted to discharge an employee for being absent from work due to an allowed injury for which the employee is receiving TTD [temporary total disability] compensation. We hold, therefore, that an employee who is receiving TTD compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition."

{¶ 48} Appellant points to Dr. Amin's statements that she was terminated due to her absenteeism. She also points out that her termination occurred while she was on medical leave and that she received TTD benefits for her absence from work during this period.

{¶ 49} Additionally, appellant argues that a genuine issue of material fact exists as to whether appellees had a nondiscriminatory reason for her termination. She states that the only reason appellees gave for her termination was her absenteeism. However, she claims that the evidence demonstrated that prior to her work accident, she missed only one day of work every five to six months.

{¶ 50} A retaliatory-discharge claim can take one of two forms—a statutory claim or a common-law claim. Appellant raised both.

{¶ 51} Appellant's argument surrounding the Ohio Supreme Court's decision in *Coolidge,* supra, is limited to the public-policy claim. However, the discussion regarding *Coolidge* has been rendered moot given a recent Ohio Supreme Court decision. On December 20, 2007, the Ohio Supreme Court determined that *Coolidge* is limited to the very specific facts of that case. *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201. The court stated that its holding in *Coolidge* was limited to "considerations of 'good and just cause' for termination under R.C. 3319.16 [which deals with the termination of a teacher's contract] and does not create a claim of wrongful discharge in violation of public policy for an employee who is discharged while receiving workers' compensation." Id. at ¶ 2.

{¶ 52} The court went on to hold:

{¶ 53} "An employee who is terminated from employment while receiving workers' compensation has no common-law cause of action for wrongful discharge in violation of the public policy underlying R.C. 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act. (*Coolidge v. Riverdale Local*

*School Dist.,* 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, limited.)" Id. at the syllabus.

{¶ 54} Thus, based on the court's recent holding, appellant is now limited to asserting only a statutory retaliation claim. Her public-policy claim is no longer an option.

{¶ 55} A statutory retaliatory-discharge claim is governed by R.C. 4123.90, which provides that no employer shall discharge or take any punitive action against an employee because the employee filed a workers' compensation claim.

{¶ 56} To prove a violation of R.C. 4123.90, the employee must set forth a prima facie case of retaliatory discharge demonstrating that (1) she was injured on the job, (2) she filed a claim for workers' compensation, and (3) she was discharged by her employer in contravention of R.C. 4123.90. *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, at the syllabus. Once the employee demonstrates a prima facie case, the burden shifts to the employer to set forth a legitimate, nonretaliatory reason for the discharge. *Kilbarger v. Anchor Hocking Glass Co.* (1997), 120 Ohio App.3d 332, 338, 697 N.E.2d 1080. If the employer can set forth a nonretaliatory reason for the discharge, the burden then shifts back to the employee to show that the employer's reason is a pretext and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act. Id.

{¶ 57} In this case, there is no dispute that appellant was injured on the job on August 20, 2004, and that she filed a workers' compensation claim both immediately following her injury and again in March 2005. However, a question of fact surrounds whether appellant was discharged because she filed her workers' compensation claim.

{¶ 58} In his deposition, DeLuca stated that Dr. Amin had indicated to him that appellant had several absences due to her workplace injury. DeLuca stated that Dr. Amin expressed a concern to him regarding appellant's absenteeism resulting from her injury. DeLuca stated that Dr. Amin expressed a concern that appellant's absences would continue into the future. DeLuca further stated that Dr. Amin contacted him a few days before he wrote the termination letter to appellant. According to DeLuca, Dr. Amin indicated that he wanted to retain Deena Reilly, the person who had been filling in for appellant, and terminate appellant. DeLuca stated that the timing of appellant's discharge was due to the fact that she was to return to work on April 29, 2005, and Dr. Amin wanted to terminate appellant before her return-to-work date.

{¶ 59} In his deposition, Dr. Amin stated that appellant had told him that she had hurt her back at home. He stated that this injury at home was part of the reason she was unable to work for five weeks. He stated that he did not know

that appellant was going to file a workers' compensation claim for the five weeks she was off in 2005. And as mentioned above, the Industrial Commission decision granting appellant TTD benefits from March 29, 2005 to May 2, 2005 was not mailed until July 22, 2005.

{¶ 60} Dr. Amin further stated that he kept personnel notes for appellant, although he did not keep such notes for any other employee. He stated that this was because appellant was the only employee who had asked him for an evaluation after six months. Dr. Amin stated that he made these notes as the events occurred. In these notes, Dr. Amin wrote that appellant was hired with a back injury that she had incurred while working for her previous employer. He stated that he felt that information was important. He also acknowledged that he noted that appellant had injured her back in a car accident in December 2002.

{¶ 61} Dr. Amin also discussed appellant's absenteeism and his reasons for replacing her. He stated that in appellant's first six months, she missed two days of work. Dr. Amin stated that his personnel notes did not list all of appellant's absences from work. He stated that this was because he forgot to record some of them. According to Dr. Amin's personnel notes, appellant did not miss any work in 2004. However, he stated that he thought she missed some days but he did not know how many. In total, Dr. Amin recorded six absences for appellant in over two and a half years.

{¶ 62} Dr. Amin also acknowledged a time in January 2003 when appellant called and stated that she could not come to work the next day because her back hurt. However, when Steubenville Orthopedics could not find anyone to fill in for appellant and asked her to come to work, she did.

{¶ 63} Dr. Amin stated that he was concerned that appellant's injury would prevent her from coming to work, and he needed someone who could come to work on a regular basis. However, he stated that appellant's replacement had missed five to ten days of work in the 18 months that she had been there, yet he had no concerns about her reliability for coming to work.

{¶ 64} Dr. Amin further stated that he was bothered by appellant's discussion with other employees about her wages.

{¶ 65} And Dr. Amin stated that appellant was not committed to her job. He stated that he had reached this opinion of appellant in her first year of employment, which was 2002. However, he had no explanation for why he kept her on for over two years after this, despite his displeasure with her. Furthermore, even though Dr. Amin claimed to have been displeased with appellant, he gave her a 50-cent-an-hour raise in January 2003 and another 50-cent-an-hour raise in July 2003.

{¶ 66} Georgeanna Hasley, the office manager, stated in her deposition that she first brought concerns to Dr. Amin about appellant's absence from work after appellant's injury.

{¶ 67} DeLuca also stated that both Dr. Amin and Hasley indicated to him that appellant had frequent absences due to her back injury.

{¶ 68} Hasley further testified regarding the circumstances surrounding appellant's termination. She stated that appellant called her on April 26, 2005, to inform her that she would be back to work on May 2, 2005. This was also evidenced by an email Hasley sent to someone at HMRI. Hasley stated that at this time, she was unaware that appellant would not be returning to Steubenville Orthopedics. In the email, however, Hasley wrote, "As far as she is concerned— she thinks she is returning on Monday." Hasley stated that this was simply referring to the change in dates on which appellant expected to return.

{¶ 69} Dr. Amin stated that he found out that appellant would be able to return to work sometime in the week prior to her return date. However, Dr. Amin stated that when appellant called and informed Hasley that she would be returning to work, he had already decided to keep Reilly. He stated that Hasley then came to talk to him about the situation. Dr. Amin stated that by April 26, 2005, Hasley had already told Reilly that she was going to be staying on. However, Hasley stated that she had no idea that appellant was not coming back until after appellant received the termination letter on April 27.

{¶ 70} Dr. Amin also testified that he was aware that the Bureau of Workers' Compensation determined that appellant's five-week absence from work during March and April 2005 was due to her workplace injury. However, he stated that he disagreed with this determination because he believed that appellant's injury was due to her hurting her back at home. And he stated that he did not find out that appellant was claiming that her five-week absence in 2005 was due to her work injury until "later."

{¶ 71} Furthermore, DeLuca stated that Dr. Amin indicated to him that he should challenge appellant's workers' compensation claim because appellant had reinjured herself at home.

{¶ 72} "The causal connection for a R.C. 4123.90 claim requires evidence of a retaliatory state of mind of the employer. But a plaintiff is not required to present a 'smoking gun' to carry his burden of offering evidence adequate to create an inference that the employment decision was retaliatory. The plaintiff may satisfy his burden with any persuasive evidence of a retaliatory intent and by a direct or an indirect method of proof. Thus, in the absence of sufficient direct proof, the trier of fact should consider a variety of factors in determining whether there is an inference of a retaliatory motive, including, but

not limited to, the temporal proximity of the discharge to the filing of the claim, whether there was punitive action directed towards the employee after the claim was filed, whether the employer evinced a hostile attitude, and whether a legitimate reason existed for the discharge.

{¶ 73} "In reviewing the length of time between the claim and the discharge, the trier of fact can consider the date the claim was filed as well as the date of significant actions involving the injured worker's pursuit of the benefits. While the timing of the termination can contribute to an inference of retaliation, temporal proximity alone is insufficient to support a finding of a causal connection." (Footnotes omitted.) *Buehler v. AmPam Commercial Midwest*, 1st Dist. No. C–060475, 2007-Ohio-4708, 2007 WL 2683520, at ¶ 24–25.

{¶ 74} The indirect evidence set out above is sufficient for appellant to assert a prima facie case of retaliatory discharge. In this case, on April 26, 2005, appellant informed Dr. Amin through Hasley that she would be returning to work on May 2. The very next day, April 27, appellant received the letter from DeLuca terminating her employment. And while Dr. Amin stated that he was unaware at this time that appellant was claiming that her five-week absence in March and April 2005 was related to her workplace injury, he was well aware that appellant had filed a workers' compensation claim. Additionally, although HMRI was determined to be appellant's employer for purposes of her workers' compensation claim, Dr. Amin found it necessary to inform DeLuca that appellant had injured her back at home just prior to going on leave in March 2005. Dr. Amin further stated that he disagreed with the Industrial Commission's decision that appellant was entitled to workers' compensation for the five weeks she was off in 2005 because he believed that appellant's injury was due to her hurting her back at home. He also urged DeLuca to challenge appellant's claim.

{¶ 75} Since appellant asserted a prima facie case, the burden shifted to appellees to put forth a nonretaliatory reason for appellant's discharge. They did so by basing appellant's termination on her absenteeism.

{¶ 76} The burden then shifted back to appellant to demonstrate that the reason put forth by appellees was merely a pretext. The evidence that appellant set forth created a genuine issue of material fact as to whether appellees' stated reason for her termination was a pretext.

{¶ 77} While Dr. Amin stated that the reason he kept personnel notes for appellant and not for any other employee was because she requested an evaluation after six months, this seems peculiar, especially in light of the fact that he recorded appellant's various back injuries. Dr. Amin found it important to record in appellant's personnel notes that she had injured her back while working with her previous employer and that she had injured her back in a car accident.

{¶ 78} Furthermore, the main reason for appellant's termination, according to Dr. Amin, was her excessive absenteeism. However, according to Dr. Amin's own notes, prior to appellant's workplace injury, she had missed only six days of work in over two and a half years. And Dr. Amin stated that appellant's replacement, Reilly, had missed five to ten days of work in the 18 months that she had been there. Yet he had no concerns regarding Reilly's attendance as he had with appellant.

{¶ 79} Additionally, Dr. Amin stated that appellant was not committed to her job and that he became displeased with her during her first year of employment. But Dr. Amin then gave appellant a 50–cent–an–hour raise in January 2003 and another 50–cent–an–hour raise in July. Had he been truly displeased with appellant, one would think that he would not have given her two raises.

{¶ 80} In addition, appellees argue in part that appellant's claim must fail because when she was terminated on April 27, 2005, her workers' compensation claim had not yet been allowed. Appellant's claim was not allowed by the Industrial Commission until July 2005. However, appellees' reasoning must fail. The critical fact here was that appellant *filed* her workers' compensation claim before she was terminated. See *Rauhuff v. Am. Fan Co.* (June 21, 1999), 12th Dist. No. CA98–09–188, 1999 WL 527783. The fact that she did not receive notice of the allowance of her claim until after she was terminated does not affect the fact that appellees were aware that appellant had a workers' compensation claim pending. See id.

{¶ 81} Based on the foregoing, the trial court erred in granting summary judgment to Steubenville Orthopedics on appellant's statutory retaliatory-discharge claim. Accordingly, appellant's second issue is meritorious as it applies to her statutory retaliation claim.

{¶ 82} Appellant's third issue states:

{¶ 83} "The trial court committed error when it ruled that the appellees were entitled to summary judgment as to Counts II and IV of the Complaint."

{¶ 84} Here, appellant argues that summary judgment was improper on her disability-discrimination claims. She asserts that Dr. Amin perceived her as having a disability because he thought that her injury prevented her from coming to work in any position. In support, appellant relies on Dr. Amin's deposition.

{¶ 85} Like the retaliatory discharge claims, appellant's disability-discrimination claim takes two forms—a statutory claim and a common law claim.

{¶ 86} R.C. 4112.02 governs statutory disability-discrimination claims. It provides that it is an unlawful discriminatory practice for an employer to discharge without just cause an employee based on disability. R.C. 4112.02(A).

A disability includes "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).

{¶ 87} In order to prove disability discrimination under R.C. 4112.02, the plaintiff must show that: (1) she has a qualifying disability, (2) she was terminated at least in part because of her disability, and (3) her disability does not prevent her from safely and substantially performing the essential functions of the job in question. *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204.

{¶ 88} Appellant did not assert that she is disabled. Instead, she asserted that appellees perceived her as being disabled. To succeed on this theory, appellant must show that appellees considered her failure to meet the physical requirements of the job as foreclosing her from a class of jobs. *Lanterman v. Columbia Gas of Ohio, Inc.*, 7th Dist. No. 01–CO–54, 2002-Ohio-5224, 2002 WL 31169030, at ¶ 22. This court has stated that the employee's burden is to establish that the employer regarded her as substantially limited in her ability to perform such fundamental and routine tasks as are necessary to exist in everyday life, not merely to establish that the employer regarded the employee as limited in her abilities to perform the specific tasks associated with a specific job. *Kemo v. St. Clairsville* (1998), 128 Ohio App.3d 178, 186, 714 N.E.2d 412.

{¶ 89} In support of her position, appellant relies on Dr. Amin's deposition testimony. In his deposition, Dr. Amin stated that he had concerns when appellant left work in March 2005 that she would not be able to come back to work or that she would not be able to come back on a regular basis. He stated that he based this concern on appellant's back pain. However, he did not consider her back pain to be a "physical impairment." Dr. Amin stated that he was concerned that appellant had an injury that would prevent her from coming back to work. He stated that his concern was with appellant's attendance at work. During these questions, Dr. Amin took note that appellant's job was that of an x-ray technician. Dr. Amin further stated that he wanted to keep Reilly on because he needed someone who did not have an injury that prevented her from coming to work. When asked if he had any concerns when appellant took off work whether she had a physical impairment that would prevent her from handling the physical requirements of her job, Dr. Amin stated that he did not.

{¶ 90} Additionally, DeLuca stated that when Dr. Amin told him that he wanted to retain Reilly and fire appellant, Dr. Amin asked him whether he knew of any other physicians who might need appellant's services.

{¶ 91} This evidence does not support appellant's claim that appellees perceived her as having a disability. Dr. Amin seemed to believe only that appellant might not be able to return to work as an x-ray technician. Appellant presented no evidence that Dr. Amin perceived her as being unable to return to work in any position, as is required. And if Dr. Amin had actually perceived appellant as being disabled and unable to work, he would not have asked DeLuca whether DeLuca knew of any other physicians who might hire appellant.

{¶ 92} Furthermore, this court has held that the test that a plaintiff alleging disability discrimination based on a perceived disability must meet is to show that the "impairment upon which the decision is allegedly based would, if it in fact existed, substantially limit one or more major life activities." *Kemo,* 128 Ohio App.3d at 185, 714 N.E.2d 412. Here, appellant presented no evidence that her perceived disability (lower back pain) would substantially limit the major life activity of working or any other major life activity. In fact, appellant stated at her deposition that she is now working and leading a normal life.

{¶ 93} Thus, the trial court properly granted summary judgment in favor of Steubenville Orthopedics on appellant's statutory disability-discrimination claim.

{¶ 94} Appellant also raised a common-law public-policy claim alleging disability discrimination. To prevail on a wrongful-discharge claim in violation of a public policy, the plaintiff must meet four elements: (1) there must exist a clear public policy that is manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element), (2) dismissal, under the alleged circumstances, must jeopardize the public policy (the jeopardy element), (3) plaintiff's dismissal must be motivated by conduct related to the public policy (the causation element), and (4) there must be no overriding legitimate business justification for the dismissal (the overriding justification). *Barnes v. Cadiz* (Mar. 19, 2002), 7th Dist. No. 01–531–CA, 2002 WL 925040, at ¶ 14, citing *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 151, 677 N.E.2d 308. The causation and overriding-justification elements are questions of fact for the jury, while the clarity and jeopardy elements are questions of law for the court. Id.

{¶ 95} For the same reasons that appellant's statutory disability-discrimination claim fails, this claim too must fail. Accordingly, summary judgment was proper on appellant's common-law disability-discrimination claim. Thus, appellant's third issue is without merit.

{¶ 96} Based on our resolution of appellant's issues, appellant's first assignment of error has merit as it pertains to her statutory retaliatory-discharge claim only. Appellant's first assignment of error does not have merit as it pertains to her common-law retaliatory-discharge claim and disability-discrimination claims. Appellant's second assignment of error does not have merit.

{¶ 97} For the reasons stated above, the trial court's judgment is hereby reversed and the cause is remanded only as it pertains to Steubenville Orthopedics on appellant's statutory retaliatory-discharge claim. It is affirmed in all other respects.

Judgment accordingly.

DeGENARO, P.J., and VUKOVICH, J., concur.