Cupp, J.
{¶ 1} In this discretionary appeal, we examine the boundaries of our decision in Coolidge v. Riverdale Local School Dist., 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, and determine whether the tort of wrongful discharge in violation of public policy applies to a nonretaliatory discharge of an injured worker receiving workers’ compensation benefits.
{¶ 2} We hold that Coolidge is limited to considerations of “good and just cause” for termination under R.C. 3319.16 and does not create a claim of wrongful discharge in violation of public policy for an employee who is discharged while receiving workers’ compensation.
*352 I
{¶ 3} In 1994, appellee, Shelley Bickers, was injured in the course of her employment with Western & Southern Life Insurance Company (“Western & Southern”). Bickers filed a claim for workers’ compensation, and the claim was allowed for multiple conditions. Following the injury, and directly related to the allowed conditions in the workers’ compensation claim, Bickers experienced periods of inability to work. During such periods, Western & Southern did not provide her a position within the restrictions set by her physician. In 2002, Western & Southern terminated Bickers while she was still receiving temporary total disability benefits related to her workers’ compensation claim.
{¶ 4} Bickers filed a complaint for wrongful discharge. Among other things, Bickers alleged that while receiving temporary total disability benefits, she had been wrongfully terminated from Western & Southern in violation of the state’s public policy. In support of the foregoing claim, Bickers relied on Coolidge v. Riverdale Local School Dist., 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61.
{¶ 5} In response, Western & Southern filed a Civ.R. 12(B)(6) motion to dismiss, which the trial court granted. Bickers appealed.
{¶ 6} The court of appeals reversed. The appellate court determined that Bickers’s situation was sufficiently similar to that presented in Coolidge that she met the requirements to maintain a Coolidge-based claim of wrongful discharge in violation of public policy in a workers’ compensation context. Bickers v. W. & S. Life Ins. Co., Hamilton App. No. C-040342, 2006-Ohio-572, 2006 WL 305442. The appeals court also refused to impose the procedural requirements in R.C. 4123.90, concluding that compliance with those requirements was not necessary to maintain a Coolidge-based public-policy wrongful-discharge claim.
{¶ 7} Western & Southern then appealed to this court, and we accepted jurisdiction.
II
{¶ 8} This court’s 17-year history with the tort of “wrongful discharge in violation of public policy” has been filled with fits and starts. For example, the tort of wrongful discharge in violation of public policy was first recognized in 1990. Greeley v. Miami Valley Maintenance Contrs., Inc. (1990), 49 Ohio St.3d 228, 234, 551 N.E.2d 981. Two years later, Greeley was partially overruled, but its analysis was reinstated after another two years passed. See Tulloh v. Goodyear Atomic Corp. (1992), 62 Ohio St.3d 541, 584 N.E.2d 729 (partially *353 overruling the Greeley decision); Painter v. Graley (1994), 70 Ohio St.3d 377, 639 N.E.2d 51 (reinstating the Greeley analysis).
{¶ 9} One of this court’s more recent statements on the tort of wrongful discharge in violation of public policy is Coolidge v. Riverdale Local School Dist., 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61. In Coolidge, a public school district’s board of education discharged one of its teachers while she was absent from her duties because of a work-related injury. The teacher was receiving temporary total disability benefits under the workers’ compensation system for that injury. Significantly, the teacher was not an at-will employee. The school district employed the teacher under a contract governed by R.C. 3319.16, which afforded her protection from termination without “good and just cause.”
{¶ 10} The teacher in Coolidge argued that the “good and just cause” provision of R.C. 3319.16 should be construed to protect her from discharge by the school district solely because of her absence due to her work-related injury. To support her argument, the teacher pointed to R.C. 4123.56, the statute allowing temporary total disability compensation, and R.C. 4123.90, the antiretaliation statute.[1] In resolving the matter, we agreed with the teacher’s argument.
{¶ 11} Bickers’s claim has afforded us the opportunity to revisit the Coolidge decision. Having duly considered the Coolidge opinion and the circumstances presented by Bickers, we limit Coolidge to holding that terminating a teacher for absences due to a work-related injury while the teacher is receiving workers’ compensation benefits is a termination without “good and just cause” under R.C. 3319.16.[2] Because Bickers is not a teacher protected by a contract covered by R.C. 3319.16, Bickers is not entitled to the benefit of the holding in Coolidge and may not assert a wrongful-discharge claim in reliance on Coolidge. Bickers is an at-will employee. Because Coolidge does not create a cause of action for an at- *354 will employee who is terminated for nonretaliatory reasons while receiving workers’ compensation, the trial court properly dismissed Bickers’s claim.
Ill
{¶ 12} In framing the issue presented in Coolidge, we stated that “if Coolidge can show that her discharge contravened public policy expressed in the Workers’ Compensation Act, she will have established that her discharge was without good and just cause under R.C. 3319.16.” 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61, at ¶ 20. In resolving the issue, we stated in general terms that “[a]n employee who is receiving temporary total disability compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition.” Id. at syllabus. In applying that general syllabus to the narrow issue, we specifically found that since the work-related injury for which the teacher received temporary total disability benefits caused her absenteeism and inability to work, the school district violated public policy when it discharged the teacher. Id. at ¶ 52. Consequently, the school district did not have “good and just cause” for discharging the teacher under R.C. 3319.16. Id.
{¶ 13} The extent of our syllabus and opinion in Coolidge has been the subject of considerable debate. Some have interpreted Coolidge as expanding the public-policy exception to the employment-at-will doctrine. See, e.g., Kusens v. Pascal Co., Inc. (C.A.6, 2006), 448 F.3d 349, 365-366; Welty v. Honda of Am. Mfg., Inc. (S.D.Ohio 2005), 411 F.Supp.2d 824, 834; Hall v. ITT Automotive (N.D.Ohio 2005), 362 F.Supp.2d 952, 962-963. Others have concluded that Coolidge only “expanded the type of action that constitutes retaliation under R.C. 4123.90 to include termination for absenteeism while on [temporary total disability].” Brooks v. QualChoice, Inc., Cuyahoga App. No. 85692, 2005-Ohio-5136, 2005 WL 2386479, ¶ 11.
{¶ 14} Commentators have also expressed concern with the decision. Ellis, Absenteeism Due to a Work-Related Injury: A Critique of Ohio’s Most Recent Public Policy Exception (2004), 54 Case W.Res.L.Rev. 1415; Siegel & Stephen, Baldwin’s Ohio Employment Practices Law (2007), Section 3:39. One commentator stated that it “would not be an overstatement to characterize as ‘shocking’ the decision issued by the Ohio Supreme Court in [Coolidge ].” Wilkinson & Perry, Temporary Total and Coolidge: Are Injured Workers “Fireproof’? (Nov./Dec. 2003), 18 Workers’ Comp.J. of Ohio 6, 73. Although the goal of permitting “injured workers to recover from a work-related injury without fear of losing their job” is laudable, Coolidge has also been viewed as a “logistical nightmare.” Id. at 73. “[Preventing employers from managing their workforce to ensure *355 production” and creating an opportunity for “malingering and abuse in the area of temporary total compensation” are among the noted ills of Coolidge’s real world application. Id.
{¶ 15} We find it necessary to clarify the Coolidge opinion. Although certain language in Coolidge could be interpreted as creating a new exception to the employment-at-will doctrine for employees who are terminated while receiving workers’ compensation, a careful reading reveals that the actual holding is narrower than the opinion’s overbroad dicta. The language from the text of the opinion provides context and reveals our overall rationale, but the Coolidge court decided a very limited issue. Specifically, the Coolidge court held that judicial inquiry is warranted into whether an employer acted contrary to public policy when it discharged an employee when R.C. 3319.16 is implicated. As a result, the holding in Coolidge is confined to considerations of whether “good and just cause” supported the termination of an employee protected under R.C. 3319.16. Coolidge at ¶ 52.
{¶ 16} A significant omission from the Coolidge opinion itself supports the view that its application is limited: it contains no discussion of the elements of a claim of wrongful discharge in violation of public policy as set forth in Painter v. Graley, 70 Ohio St.3d 377, 639 N.E.2d 51,[3] and Leininger v. Pioneer Natl. Latex, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶ 8-12. Clearly, Painter was not relevant to the disposition of the Coolidge case because the Coolidge holding derived from the “good and just cause” provision of R.C. 3319.16.
IV
{¶ 17} In addition to concluding that Coolidge is inapplicable to Bickers’s situation, we also hold that the constitutionally sanctioned, and legislatively created, compromise of employer and employee interests reflected in the workers’ compensation system precludes a common-law claim of wrongful discharge in *356 violation of public policy when an employee files a workers’ compensation claim and is discharged for nonretaliatory reasons.
{¶ 18} This conclusion is supported by the origin and nature of the workers’ compensation system. Prior to the enactment of the Workers’ Compensation Act in 1913, common-law tort principles governed recovery for work-related injuries. Fulton, Ohio Workers’ Compensation Law (2d Ed.1998) 3, Section 1.2. The common-law system, however, proved unable to address the social and economic consequences arising from industrial accidents. State ex rel. Yaple v. Creamer (1912), 85 Ohio St. 349, 389, 97 N.E. 602. Eventually, it became clear that the tort-based system should be replaced by a system charging the economic losses incurred by injured Ohio workers and their families, without fault or wrongdoing, to the industry rather than to the individual or society as a whole. See, e.g., Indus. Comm. v. Weigandt (1921), 102 Ohio St. 1, 4-5, 130 N.E. 38; State ex rel. Munding v. Indus. Comm. (1915), 92 Ohio St. 434, 450, 111 N.E. 299.
{¶ 19} In this spirit, the people of Ohio adopted a constitutional provision authorizing the General Assembly to establish the workers’ compensation system by statute. Section 35, Article II, Ohio Constitution. This statutory framework supplanted, rather than amended or supplemented, the unsatisfactory common-law remedies. Indus. Comm. v. Kamrath (1928), 118 Ohio St. 1, 3-4, 160 N.E. 470; Weigandt, 102 Ohio St. at 7, 130 N.E. 38. Moreover, the Act “operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability.” Blankenship v. Cincinnati Milacron Chem., Inc. (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572. The underlying premise of the workers’ compensation system arises from this compromise. Fulton, Ohio Workers’ Compensation Law, at 4, Section 1.2.
{¶ 20} The policy choice between permitting and prohibiting the discharge from employment of an employee who has been injured at work is a difficult one, as it inevitably creates a burden of some degree upon either the employer or the employee.
{¶ 21} Should the policy choice be to deny employers the exercise of their employment-at-will prerogative and require them to hold open the jobs of injured employees for indefinite periods of time, then employers will be burdened with employees unable to perform the work for which they were hired and an inability to obtain permanent replacements. This resolution would be particularly onerous on small employers with few employees, who lack the ability to shift the duties of an injured employee to other employees.
*357 {¶ 22} Should the policy choice be to permit an employer to terminate a worker who is injured on the job and cannot work as a result, then the worker suffers not only the burden of being injured but also the burden of unemployment at a time when seeking a new position is made more difficult by the injury.
{¶ 23} In addressing this difficult policy issue, which lacks wholly satisfactory solutions, the General Assembly chose to proscribe retaliatory discharges only. Employers may not retaliate against employees for pursuing a workers’ compensation claim. R.C. 4123.90. It is within the prerogative and authority of the General Assembly to make this choice when determining policy in the workers’ compensation arena and in balancing, in that forum, employers’ and employees’ competing interests. See, e.g., Rambaldo v. Accurate Die Casting (1992), 65 Ohio St.3d 281, 288, 603 N.E.2d 975. We may not override this choice and superimpose a common-law, public-policy tort remedy on this wholly statutory system. Id.
{¶ 24} Moreover, it would be inappropriate for the judiciary to presume the superiority of its policy preference and supplant the policy choice of the legislature. For it is the legislature, and not the courts, to which the Ohio Constitution commits the determination of the policy compromises necessary to balance the obligations and rights of the employer and employee in the workers’ compensation system. Section 35, Article II, Ohio Constitution.
{¶ 25} Against this backdrop, it becomes apparent that the imposition of common-law principles of wrongful discharge into the workers’ compensation arena runs counter to “the balance of mutual compromise between the interests of the employer and the employee” as expressed by the General Assembly within the Act. Bickers’s remedy must be found within the workers’ compensation statutes. In this regard, however, Bickers conceded early in the litigation that she had not complied with the procedural requirements of R.C. 4123.90. Because Bickers does not assert a statutory retaliatory discharge claim, she fails to state a claim for which relief can be granted, and the trial court did not err in dismissing her complaint.
V
{¶ 26} Therefore, based on the foregoing, we hold that an employee who is terminated from employment while receiving workers’ compensation has no common-law cause of action for wrongful discharge in violation of the public policy underlying R.C. 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers’ Compensation Act.
*358 {¶ 27} For the reasons expressed herein, we reverse the judgment of the court of appeals.
Judgment reversed.
Lundberg Stratton, O’Connor, O’Donnell, and Lanzinger, JJ., concur.
Moyer, C.J., and Pfeifer, J., dissent.

. {¶ a} The relevant text of R.C. 4123.90 provides:
{¶ b} “No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers’ compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141. of the Revised Code plus reasonable attorney fees.”

. As provided in the first sentence of R.C. 3319.16, “The contract of any teacher employed by the board of education of any city, exempted village, local, county, or joint vocational school district may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause.”

. {V a} These four elements are:
{¶ b} “ ‘1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
{¶ c} “ ‘2. That dismissing employees under circumstances like those involved in the plaintiffs dismissal would jeopardize the public policy (the jeopardy element).
{¶ d} “ ‘3. The plaintiffs dismissal was motivated by conduct related to the public policy (the causation element).
{¶ e} “ ‘4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).’ ” (Emphasis sic.) Painter v. Graley (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, fn. 8, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self-Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399.