OPINION
{¶ 1} Plaintiff-appellant, Eric McDannald, appeals a decision from the Madison County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Robert L. Fry Associates, Inc. We affirm the decision of the trial court.
 {¶ 2} Robert L. Fry Associates ("Fry Associates") is a drywall, metal stud, framing and acoustical ceiling contractor located in West Jefferson. Through a softball league, *Page 2 
McDannald befriended Dale Fry, the brother of Robert Fry. At the time, McDannald was on parole after serving eight years and eleven months in prison for a rape conviction. As terms of his parole, McDannald was required to find a job. Knowing of McDannald's need for work, Dale encouraged McDannald to apply for a job at Fry Associates. McDannald submitted an application and interviewed with Robert and Don Fry for a position.[1] McDannald was hired to frame and insulate walls and install drywall.
 {¶ 3} On December 4, 2004, a bundle of studs fell on McDannald's left shin. The injury was diagnosed as a left ankle sprain/strain and bruise. As a result of the injury, McDannald filed a workers' compensation claim. After missing two days of work, McDannald's doctor released him to return to work in a light duty capacity. McDannald was assigned to Fry's warehouse to fabricate metal parts and braces to be used at worksites.
 {¶ 4} In March 2005, frustrated with McDannald working over three months of light duty, Robert Fry requested paperwork from McDannald's doctor regarding his work status. Within a few days, McDannald was released to return to work with no restrictions and McDannald returned to his original duties.
 {¶ 5} On May 5, 2005, McDannald sprained his right ankle while descending a scaffold. Pursuant to company policy, McDannald was given a post-accident drug test and tested positive for excessive levels of prescription pain killers.[2] Robert Fry informed McDannald that he could return to work after completing drug counseling and rehabilitation.
 {¶ 6} Shortly after suffering the injury, McDannald filed a workers' compensation claim. In August 2005, McDannald placed the costs of his treatment on an earlier workers' *Page 3 
compensation claim from 1994 where he had previously injured his right ankle while working for a different employer. Accordingly, the industrial commission dismissed McDannald's May 2005 claim against Fry Associates.
 {¶ 7} During the temporary total disability, McDannald received a letter dated September 15, 2005 from the third-party health insurance company, advising him that his employment had been "terminated" and that he was entitled to continue his health coverage through COBRA.[3]
McDannald contacted Robert Fry about the letter. Fry advised him that he was not terminated and sent a letter on November 17, 2005 stating that McDannald could return to work as soon as he was cleared for light duty. McDannald claims that he contacted Fry when he was able to perform light duty work, but Fry refused to take him back until he was cleared for full duty by his doctor.
 {¶ 8} McDannald claims that he provided a December 19, 2005 clearance from his doctor, but the company, after waiting until January 20, 2006, insisted that McDannald's doctor fill out a form provided by the company. On January 26, 2006, the form was returned and the doctor released McDannald to return to work. Robert Fry informed McDannald no work was available at that time and that he would call McDannald when work became available. In its brief, the company also notes that it never received confirmation that McDannald had successfully completed a mandatory return-to-duty drug test.
 {¶ 9} McDannald filed the instant action on February 22, 2006, alleging termination in retaliation for filing and/or pursuing the workers' compensation claims. McDannald notes that "to date, Mr. Fry has refused to take Mr. McDannald back to work." Yet, despite the company's repeated statements that there has been a lack of work, the company has hired *Page 4 
six individuals to do the work that McDannald previously performed.[4]
 {¶ 10} In opposition, Fry Associates claims that during discovery, it learned for the first time the nature of McDannald's criminal history; specifically that he was convicted of rape and served nearly nine years in prison. According to the company, regardless of business conditions, the termination is permitted because McDannald failed to disclose the extent of his criminal history and the company would "not now want him in a position where he may have access to women."
 {¶ 11} The trial court granted summary judgment in favor of Fry 
Associates. McDannald timely appeals, raising three assignments of error.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT DISMISSING ERIC MCDANNALD'S CLAIM THAT HIS FIRING VIOLATES OHIO REV. CODE 4123.90."
 {¶ 14} In his first assignment of error, McDannald argues the trial court erred by granting summary judgment in favor of Fry Associates. McDannald contends that Fry Associates terminated his employment in retaliation for filing and pursuing his workers' compensation claim in violation of R.C. 4123.90.
 {¶ 15} This court's review of a trial court's ruling on a motion for summary judgment is de novo. Broadnax v. Greene Credit Service (1997),118 Ohio App.3d 881, 887. Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ. R. 56; Smith *Page 5 v. Five Rivers MetroParks (1999), 134 Ohio App.3d 754, 760. The burden of demonstrating that there is no genuine issue of material fact is on the moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morris v. First National Bank Trust Co.
(1970), 21 Ohio St.2d 25. To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v.Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The nonmoving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
 {¶ 16} R.C. 4123.90 provides, in pertinent part, "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."
 {¶ 17} To establish a prima facie case for retaliatory discharge under R.C. 4123.90, an employee must show that he or she (1) was injured on the job, (2) filed a workers' compensation claim, and (3) was discharged in contravention of R.C. 4123.90. Wilson v. Riverside Hosp. (1985),18 Ohio St.3d 8, 10. If the employee establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action. Kilbarger v. AnchorHocking Glass Co. (1997), 120 Ohio App.3d 332, 338. If the employer sets forth a legitimate, nondiscriminatory reason, the burden shifts back to the employee to establish that the employer's stated reason is mere pretext for retaliation for the workers' compensation claim. Id.
 {¶ 18} "Employees who have filed for workers' compensation benefits may be *Page 6 
discharged for just and lawful reasons. The statute protects only against termination in direct response to the filing or pursuit of a workers' compensation claim." White v. Mt. Carmel Med. Ctr.,150 Ohio App.3d 316, 2004-Ohio-6446, ¶ 36.
 {¶ 19} In its decision, the trial court held, "Plaintiff has not established a prima facie case of retaliatory discharge in violation of R.C. 4123.90. Construing the evidence in the light most favorable to the Plaintiff, there is no genuine issue of material fact to support the allegation that Defendant discharged him in September 2005 in retaliation for filing two claims for workers' compensation benefits. It is not clear when or if Plaintiff was terminated, but the evidence suggests miscommunication between the parties as to what was required to be submitted for Plaintiff to return to work. By the time it was apparent that he could indeed return as signified by his doctor in January, Defendant stated there was not [sic] work available. Rather than waiting for work to become available, Plaintiff instituted this present action less than a month later. The evidence before the court shows that there was much effort and communication between the employer and the employee subsequent to his injury and his filing of a workers' compensation claim, during which the employer seemed to be acting in good faith to return Plaintiff to work. He was not fired immediately upon testing positive for prescription pain killers, but encouraged to seek counseling and treatment."
 {¶ 20} We agree with the decision of the trial court. The trial court held that McDannald failed to establish a prima facie case of retaliation. Yet, the focus of McDannald's argument in his brief is that Fry Associates has failed to demonstrate a legitimate, non-discriminatory reason for the termination. McDannald argues that a genuine issue of material fact exists because "Mr. Fry expressed (directly to Mr. McDannald) his disgust for individuals who have suffered a work related injury that costs him money and do no work." McDannald also claims that the company's reason "that there was simply no work for Mr. McDannald is contradicted by its own work records establishing numerous hires of individuals doing work like the work *Page 7 
done by Mr. McDannald."
 {¶ 21} McDannald fails to address the elements of a prima facie case; specifically that his employment was terminated. In his brief, McDannald claims that "it is undisputed that Mr. McDannald has not been allowed to work since his May 5, 2005 injury." However, this does not establish that he was terminated.
 {¶ 22} The undisputed evidence shows McDannald injured his right ankle on May 5, 2005. He filed his second workers' compensation claim and received treatment. While he was temporarily totally disabled, McDannald received a letter dated September 15, 2005 from a third-party insurance company advising him that his employment had been "terminated." McDannald immediately contacted Robert Fry and was advised that his employment had not actually been terminated. Further, on November 17, 2005, Robert Fry sent McDannald a letter advising him that he could return to work as soon as he was cleared for light duty. The required form releasing McDannald to return to work was provided on January 26, 2006. At that time, Robert Fry instructed McDannald that no work was available and that he would call him when some was available. Rather than wait, McDannald filed the instant action less than a month later.
 {¶ 23} McDannald attempts to argue that since the termination, six new employees were hired by Fry Associates. He claims that this demonstrates that work was actually available and that McDannald was fired. McDannald's argument is unpersuasive. Fry Associates only hired one new employee between the time McDannald was cleared to work and before the initiation of the litigation. That employee was an apprentice, whose pay scale was less than McDannald's.
 {¶ 24} Regardless of McDannald's claims that Fry Associates failed to demonstrate a legitimate, non-discriminatory reason for the termination, McDannald has failed to establish a prima facie case of retaliatory termination. *Page 8 
 {¶ 25} McDannald's first assignment of error is overruled.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT DISMISSING ERIC MCDANNALD'S CLAIM THAT HIS FIRING VIOLATES THE PUBLIC POLICY OF OHIO."
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT DISMISSING ERIC MCDANNALD'S CLAIM THAT HIS FIRING WHILE TEMPORARILY TOTALLY DISABLED VIOLATES OHIO PUBLIC POLICY."
 {¶ 30} In his second and third assignments of error appellant argues that the trial court erred by granting summary judgment in favor of Fry Associates and dismissing his common law public policy claims.
 {¶ 31} In Bickers v. W. S. Life Ins. Co., 116 Ohio St.3d 351,2007-Ohio-6751, syllabus, the Ohio Supreme Court held that "[a]n employee who is terminated from employment while receiving workers' compensation has no common-law cause of action for wrongful discharge in violation of public policy underlying R.C. 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act."
 {¶ 32} McDannald's exclusive remedy is under his Workers' Compensation Act claim. Accordingly, his public policy claims are dismissed. McDannald's second and third assignments of error are overruled.
 {¶ 33} Judgment affirmed.
WALSH, P.J. and BRESSLER, J., concur.
[1] The parties dispute the extent of McDannald's disclosure of his criminal history. In his brief, McDannald claims that he "expressly advised Robert Fry of his rape conviction and the specifics of it on the day he was hired." In contrast, Fry Associates claim that McDannald only stated that he "just got out of prison" for "fellatio" and that he would need some time off from work twice per month to see his parole officer.
[2] McDannald claims that the pain killers were taken to relieve pain from the December 4, 2004 ankle injury.
[3] Fry Associates claim that the third-party administrator inadvertently described the COBRA "qualifying event" as termination, when, in fact, McDannald's employment had not been terminated.
[4] Fry Associates note, however, that only one individual was hired before McDannald filed this lawsuit. That individual was hired as an apprentice, whose wage is less than McDannald. Moreover, the remaining five individuals were hired after McDannald filed this case against the company. *Page 1