MORTENSEN, Appellant and Cross–Appellee,

v.

INTERCONTINENTAL CHEMICAL CORPORATION,
Appellee and Cross–Appellant.

[Cite as *Mortensen v. Intercontinental Chem. Corp.*,
178 Ohio App.3d 393, 2008-Ohio-4723.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–070826 and C–070844.

Decided Sept. 19, 2008.

Freking & Betz, L.L.C., and George M. Reul Jr., for appellant and cross-appellee.

Kohnen & Patton, L.L.P., Peggy M. Barker, and Louis C. Schneider, for appellee and cross-appellant.

DINKELACKER, Judge.

## I. Facts and Procedure

{¶ 1} Plaintiff, Phil Mortensen, appellant and cross-appellee, filed suit against his former employer, defendant, Intercontinental Chemical Corporation ("ICC"), appellee and cross-appellant, for retaliatory discharge under R.C. 4123.90 and common-law wrongful discharge in violation of the public policy set forth in R.C. 4123.90. Specifically, he contended that ICC fired him for pursuing a workers' compensation claim.

{¶ 2} The statutory claim was tried to the court and the common-law claim was tried to a jury. The evidence presented at trial showed that ICC had hired Mortensen in 2002 to perform general maintenance. He was initially a salaried employee, but ICC made him an hourly employee due to his absenteeism. During his employment at ICC, Mortensen missed a large amount of work. He called in sick, came in late, or left early on a regular basis.

{¶ 3} In addition to maintenance work, ICC began assigning Mortensen to do production work. Mostly that work consisted of "batching," which included lifting 40– to 50–pound jugs of chemicals. Mortensen contended that he was injured on September 14, 2004, after an extremely heavy day of lifting more than 200 jugs. After work, he went to see his doctor and returned to work the next day with a lifting restriction of 20 pounds.

{¶ 4} ICC's president and owner, Cameron Cord, acknowledged receipt of the work restriction. He also stated that Mortensen had complained of overexerting himself as the result of the heavy lifting. He denied having knowledge that Mortensen intended to file a workers' compensation claim. Mortensen contended that ICC refused to honor the restriction and continued to assign him heavy-lifting duties on a regular basis.

{¶ 5} On July 31, 2005, Mortensen sent Cord a letter in which he stated that although he liked working at ICC and wished to remain an ICC employee, he was "asking for a raise in salary that will bring me closer in line to the salaries that mechanics of my experience, knowledge and talents are receiving." He requested (1) a one-time payment of $1,837.50; (2) to be put back on salary and to receive a $4.10–per–hour raise as of August 1, 2005; (3) another $4.10–an–hour raise as of January 1, 2006; and (4) to receive a "cost of living allowance raise equal to the federal government's cost of living percentage" every year starting January 1, 2007.

{¶ 6} The letter went on to state that "[i]f this proposal is something we can agree upon I would be delighted and honored to give you many years of faithful service. I will have an employment contract made reflecting this proposal for the both of us to sign." Mortensen testified that if he and ICC had not come to some agreement, he would have had to find another job.

{¶ 7} Cord testified that he viewed the letter as an ultimatum. He discussed it, as well as Mortensen's history of absenteeism, with Mortensen's supervisor and other company management employees. They decided that the company's general maintenance needs were not sufficient to require a full-time position.

{¶ 8} Cord testified that he had decided to fire Mortensen on August 4, 2005, the first business day after the receipt of his letter. Cord also testified that he would not have fired Mortensen if he had not sent the letter. He denied having any knowledge at that time of Mortensen's intent to file a workers' compensation claim.

{¶ 9} On August 3, 2005, Mortensen went on medical leave, which he claimed was due to exacerbation of the injury he had sustained in September 2004. On August 17, 2005, he faxed a letter to ICC in which he stated that he had discussed with his doctor a letter he had received from a health insurance company. He went on to state, "Dr. Sawyer feels that my condition is the direct result of the duties I was assigned to do while working for ICC. Dr. Sawyer says their [sic] is some form ICC must approve to have my treatment covered." Mortensen then asked if "ICC would be willing to approve this form?" Cord and other ICC managers contended that they never received this letter and that it was not time-stamped by their facsimile machine.

{¶ 10} On August 23, 2005, Cord sent a letter to Mortensen terminating his employment with ICC. Cord testified that the reason he had waited several weeks after the decision to terminate Mortensen's employment was that he had wanted to speak to Mortensen in person. Mortensen's extended absence prevented that meeting, so he wrote a letter responding to Mortensen's proposal.

{¶ 11} Subsequently, Mortensen sent several letters to Cord asking for money or a "settlement," to which ICC did not agree. He filed several complaints with the Occupational Safety and Health Administration, which were dismissed as unsubstantiated. On September 1, 2005, he filed a workers' compensation claim for his injury on September 14, 2004.

{¶ 12} The jury returned a verdict in favor of Mortensen and awarded him damages of $99,180.88. ICC filed motions for judgment notwithstanding the verdict ("JNOV"), for a new trial, and for remittitur. The trial court concluded that the evidence did not support the jury's award of back pay and reduced the jury's award by $70,000. The court overruled the motions in all other respects, but it conditionally granted ICC's motion for a new trial on the common-law claim under Civ.R. 50(C). The court also entered judgment in favor of ICC on Mortensen's statutory claim. Both parties have appealed the trial court's judgment.

## II. Common–Law Wrongful–Discharge Claim

{¶ 13} We address ICC's cross-appeal first, since it is determinative of several issues. In its sole assignment of error, ICC contends that the trial court erred in submitting Mortensen's common-law claim for wrongful discharge to the jury. It argues that the Ohio Supreme Court's decision in *Bickers v. W. & S. Life Ins. Co.*[1] makes R.C. 4123.90 the exclusive remedy for an employee terminated for filing a workers' compensation claim. This assignment of error is well taken.

{¶ 14} The Supreme Court decided *Bickers* while this appeal was pending. Prior to that time, this court had held that a terminated employee could pursue both a statutory claim for retaliatory discharge under R.C. 4123.90 and a common-law claim for wrongful discharge in violation of the public policy in R.C. 4123.90.[2] We noted that one of the primary differences between the claims was that the common-law wrongful-discharge claim allowed for a jury trial and full monetary damages while the statutory claim did not.[3]

---

1. 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201.

2. *Meyer v. United Parcel Serv.*, 174 Ohio App.3d 339, 2007-Ohio-7063, 882 N.E.2d 31, ¶ 37–38; *Boyd v. Winton Hills Med. & Health Ctr., Inc.* (1999), 133 Ohio App.3d 150, 160–162, 727 N.E.2d 137.

3. *Meyer* at ¶ 38.

{¶ 15} In *Bickers*, we again held that the terminated employee could pursue both claims.[4] The Supreme Court disagreed. It held that "[a]n employee who is terminated from employment while receiving workers' compensation has no common-law cause of action for wrongful discharge in violation of the public policy underlying R.C. 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act."[5] Relying on *Bickers*, ICC argues that the judgment entered on the jury verdict in Mortensen's favor should be reversed. We agree.

{¶ 16} Mortensen argues that *Bickers* cannot be applied retroactively. The general rule is that a Supreme Court decision overruling a former decision is retrospective. "[T]he effect is not that the former was bad law, but that it never was the law."[6] The exception to this rule is "where contractual rights have arisen or vested rights have been acquired under the prior decision."[7] Mortensen argues that his judgment based on a jury verdict is a vested right. We disagree.

{¶ 17} In *Sharp v. Leiendecker*,[8] two estates brought claims against their decedents' insurance companies based upon the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*[9] The trial court granted summary judgment in favor of the estates. While the insurance companies' appeals were pending, the Supreme Court overruled *Scott–Pontzer* in *Westfield Ins. Co. v. Galatis*.[10]

{¶ 18} In holding that *Galatis* applied retroactively, the court in *Sharp* stated, "[T]he summary judgments rendered against the insurers on the *Scott–Pontzer* issues did not resolve the matter with * * * finality * * *. The insurers had the right to appeal from those summary judgments. So while the summary judgments were 'final' orders under R.C. 2505.02, the litigation did not terminate until all appeals were exhausted. And until all appeals were exhausted, no rights could permanently vest with the estates. As long as the possibility existed that

---

4. *Bickers v. W. & S. Life Ins. Co.*, 1st Dist. No. C–040342, 2006-Ohio-572, 2006 WL 305442.

5. *Bickers*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, at syllabus.

6. *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467; *Walters v. Commercial Union Ins. Co.* (Feb. 26, 1999), 1st Dist. No. C–980381, 1999 WL 94620.

7. *Peerless* at 210, 57 O.O. 411, 129 N.E.2d 467; *Aulizia v. Westfield Natl. Ins. Co.*, 11th Dist. No. 2006–T–0057, 2007-Ohio-3017, 2007 WL 1732382, ¶ 34–35.

8. 8th Dist. No. 87307, 2006-Ohio-5737, 2006 WL 3095751.

9. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116.

10. 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

the court's summary judgments could be reversed, the estates had no vested rights. The estates' positions would suggest that any judgment rendered by a court, no matter how erroneous, would vest rights that could not be altered on appeal. This suggestion is plainly contrary to accepted principles of appellate review. Moreover, it would wholly undermine the appellate process, for it would render moot any decision by an appellate court. In no sense could it be said for purposes of retroactivity that the estates had a vested right when that ruling was subject to appeal." [11]

{¶ 19} Mortensen argues that *Sharp* is distinguishable because it involved summary judgment and this case involved a jury verdict. But we believe the same logic applies to a judgment based on a jury verdict, which can also be reversed on appeal. Under Mortensen's argument, any judgment based on a jury verdict, no matter how erroneous, would vest rights that could not be altered on appeal.

{¶ 20} Mortensen also relies on *Sheaffer v. Westfield Ins. Co.,*[12] in which the Ohio Supreme Court refused to apply *Galatis* retrospectively under the facts of that case.[13] When the Supreme Court decided *Galatis, Sheaffer* was starting its second round of appeals. In the first appeal, the appellate court had reversed the case on a different basis and had remanded the matter for further proceedings. The Supreme Court had denied jurisdiction.

{¶ 21} In the second round of appeals, the insurance companies raised the issue whether *Galatis* should have been applied retroactively. The Supreme Court stated that once it had denied jurisdiction over the first appeal, those issues were resolved and became the law of the case.[14] It stated that while the insurance companies' argument regarding the retroactive application of *Galatis* "is generally correct, it does not apply to the particular facts of this case. When we denied jurisdiction over *Sheaffer I* [2003-Ohio-4810, 2003 WL 22098897], that decided the issue and prevented any retroactive application of *Galatis* to this case." [15]

{¶ 22} Thus, the unique procedural posture in *Sheaffer* dictated the court's decision. The holding in that case does not necessarily prevent retroactive

---

11.  *Sharp,* 2006-Ohio-5737, 2006 WL 3095751, at ¶ 14.

12.  110 Ohio St.3d 265, 2006-Ohio-4476, 853 N.E.2d 275.

13.  Id. at ¶ 13–15.

14.  *Aulizia,* 2007-Ohio-3017, 2007 WL 1732382, at ¶ 42.

15.  *Sheaffer,* 110 Ohio St.3d 265, 2006-Ohio-4476, 853 N.E.2d 275, at ¶ 13; *Aulizia* at ¶ 43.

application of a Supreme Court case decided during the pendency of a direct appeal.[16]  Therefore, *Sheaffer* does not apply in this case.

{¶ 23} Mortensen did not have a vested right in the judgment on the jury's verdict until he had exhausted his direct appeal.  Therefore, we apply *Bickers* retroactively.  Mortensen's exclusive remedy was his statutory retaliatory-discharge claim under R.C. 4123.90, and he could not maintain his common-law wrongful-discharge claim.  The trial court erred in submitting the common-law claim to the jury.  We sustain ICC's assignment of error, reverse the judgment in favor of Mortensen on the common-law claim, and enter final judgment on that claim in ICC's favor.

{¶ 24} In his first assignment of error, Mortensen claims that the trial court erred in granting ICC's motion for JNOV on the issue of back pay.  We have already held that the trial court erred in submitting Mortensen's common-law wrongful-discharge claim to the jury.  Consequently, we find this assignment of error to be moot, and we decline to address it.[17]

### III.  Statutory Retaliatory–Discharge Claim under R.C. 4123.90

{¶ 25} In his second assignment of error, Mortensen argues that the trial court erred in granting judgment in favor of ICC on his statutory claim.  He argues that the trial court's judgment was against the manifest weight of the evidence.  This assignment of error is not well taken.

{¶ 26} R.C. 4123.90 provides that "[n]o employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."  We analyze retaliatory-discharge claims using a burden-shifting approach.[18]

{¶ 27} The employee must establish a prima facie case by demonstrating that (1) the employee was injured on the job, (2) the employee instituted or pursued a claim for workers' compensation, and (3) the employer discharged the employee in violation of R.C. 4123.90.[19]  Once the employee establishes a prima facie case,

---

16. *Aulizia* at ¶ 43.

17. See App.R. 12(A)(1)(c).

18. *Gallagher v. Frohman*, 1st Dist. No. C–070756, 2008-Ohio-3582, 2008 WL 2780434, ¶ 11.

19. *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 18 OBR 6, 479 N.E.2d 275, syllabus; *Bryant v. Dayton Casket Co.* (1982), 69 Ohio St.2d 367, 370–371, 23 O.O.3d 341, 433 N.E.2d

the burden shifts to the employer to set forth a legitimate, nonretaliatory reason for the discharge. If the employer can set forth a nonretaliatory reason for the discharge, the burden then shifts back to the employee to show that the employer's reason is a pretext and that the real reason for the discharge was the employee's pursuit of a workers' compensation claim.[20]

{¶ 28} In this case, the trial court made two factual findings. First, it found that Mortensen had failed to establish a prima facie case because he did not prove that he had pursued a workers' compensation claim. Mortensen did not dispute that he did not file a claim until nine days after ICC had terminated his employment and over a year after he was injured. While an employee need not actually file a claim, he must initiate or pursue proceedings for workers' compensation benefits before being discharged.[21] R.C. 4123.90 "applies only if the employee has been discharged after taking some action that would constitute the actual pursuit of his claim, not just an expression of his intent to do so." [22]

{¶ 29} Mortensen presented the testimony of a former ICC employee to demonstrate that Cord and another employee had scoffed about Mortensen's alleged workers' compensation claim. The trial court specifically found that "this witness has no credibility." Matters as to the credibility of evidence are for the trier of fact to decide.[23]

{¶ 30} As the trial court pointed out, the only other evidence of Mortensen's pursuit of a workers' compensation claim before his discharge was his August 17, 2005 letter to ICC regarding his conversation with Dr. Sawyer. As the trial court stated, "[T]he only content of that letter that remotely relates to any Workers' Compensation claim is a statement that this doctor feels that his condition is a direct result of 'the duties that I was assigned to do' while working for ICC. This letter does not demonstrate a pursuit by [Mortensen] of a Workers' Compensation claim." That finding was supported by competent, credible evidence, and this court will not disturb it.[24]

---

142; *Cunningham v. Steubenville Orthopedics & Sports Med., Inc.,* 175 Ohio App.3d 627, 2008-Ohio-1172, 888 N.E.2d 499, ¶ 56.

**20.** *Cunningham* at ¶ 56; *Meyer,* 174 Ohio App.3d 339, 2007-Ohio-7063, 882 N.E.2d 31, ¶ 54.

**21.** *Bryant,* 69 Ohio St.2d at 370–371, 23 O.O.3d 341, 433 N.E.2d 142; *Franks v. Masonry,* 9th Dist. No. 22876, 2006-Ohio-2848, 2006 WL 1541253, ¶ 11.

**22.** *Bryant* at 371, 23 O.O.3d 341, 433 N.E.2d 142.

**23.** *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 162, 25 OBR 201, 495 N.E.2d 572; *Capeheart v. O'Brien,* 1st Dist. No. C–040223, 2005-Ohio-3033, 2005 WL 1413208, ¶ 14.

**24.** See *Shemo v. Mayfield Hts.* (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018; *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614–615, 614 N.E.2d 742.

{¶ 31} Mortensen presented evidence that Cord and other ICC employees knew that he was injured on the job. Nevertheless, the evidence also showed that Mortensen took no steps at all toward filing a workers' compensation claim before his discharge, other than complaining about his injury and the heavy lifting that he was required to do.

{¶ 32} The trial court also found that Mortensen had failed to prove that ICC's claimed reason for his discharge was pretextual. An employee can show pretext directly by persuading the court that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." [25] While the employee need not present evidence of a "smoking gun," temporal proximity alone is insufficient to show pretext.[26]

{¶ 33} The trial court found that ICC had presented a valid, nonretaliatory reason for Mortensen's discharge: Mortensen's July 31, 2005 letter asking for back pay and successive raises. The trial court characterized these raise requests as "enormous" and "astounding." It went on to state, "This letter alone with its extravagant proposals defies common sense. That together with the ultimatum tenor of the letter justifies [ICC] in terminating [Mortensen's] services." The trial court believed Cord and the other ICC employees that the ultimatum in the letter was the reason for the discharge, rather than Mortensen's claim that retaliation was the more likely reason.

{¶ 34} Since Mortensen failed to prove that he was actively pursuing a workers' compensation claim and that ICC's reason for his discharge was pretextual, the trial court did not err in granting judgment for ICC on Mortensen's statutory retaliatory-discharge claim. We overrule Mortensen's second assignment of error and affirm that part of the trial court's judgment.

## IV. Summary

{¶ 35} In sum, we reverse the trial court's judgment in favor of Mortensen on the common-law wrongful-discharge claim and enter final judgment on that claim

---

25. *Napier v. Roadway Freight, Inc.,* 6th Dist. No. L–06–1181, 2007-Ohio-1326, 2007 WL 867000, ¶ 13, citing *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207.

26. *Cunningham,* 175 Ohio App.3d 627, 2008-Ohio-1172, 888 N.E.2d 499, at ¶ 72–73; *Buehler v. AmPam Commercial Midwest,* 1st Dist. No. C–060475, 2007-Ohio-4708, 2007 WL 2683520, ¶ 24–25.

in favor of ICC. We affirm the trial court's judgment in favor of ICC on the statutory retaliatory-discharge claim.

Judgment accordingly.

SUNDERMANN, P.J., and HENDON, J., concur.