Cupp, J.,
dissenting.
{¶ 43} Ohio’s workers’ compensation system, enacted pursuant to state constitutional authority, is a wholly statutory system. Section 35, Article II, Ohio Constitution; R.C. Chapter 4123; Kaminski v. Metal & Wire Prods. Co., 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 74, 75; Bickers v. W. & S. Life Ins. Co., 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, ¶ 19; Indus. Comm, v. Kamrath (1928), 118 Ohio St. 1, 3-4, 160 N.E. 470.
{¶ 44} The court today improperly injects common-law principles into this wholly statutory system, and it exceeds its authority by doing so. Moreover, the public policy that the court seeks to vindicate by inserting the tort of wrongful discharge into the law of workers’ compensation is inapposite to the statute upon which the court relies to derive that policy.
{¶ 45} The majority opinion states that R.C. 4123.90 expresses a clear public policy against employer retaliation against injured employees. And that statement is true. There is a clear public policy against employers retaliating against injured employees who pursue benefits under the workers’ compensation system. But the majority then uses this platform to make a gigantic leap of logic to conclude that because the statute does not also prohibit employer conduct that allegedly seeks to prevent an employee from applying for workers’ compensation benefits, the statute, ipso facto, must have an unintended gap, which the court, in its wisdom, must fill.
{¶ 46} Contrary to the majority’s unsupported conclusion, there is no gap in the statute. Rather, it is clear that the legislature, whether wisely or not, chose not to proscribe employer conduct that was short of retaliation. R.C. 4123.90, as relevant here, proscribes only employer conduct that retaliates against an employee’s pursuit of a workers’ compensation claim. For an employer’s conduct to be retaliatory, the statute requires that the employee must first have sought to access the workers’ compensation system by having “filed a claim or instituted, pursued or testified in any proceedings.” R.C. 4123.90. Then, the employer must have responded by having “discharge[d], demote[d], reassigned], or take[n] any punitive action against [the] employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers’ compensation act.” R.C. 4123.90.
*166 {¶ 47} The conduct that the statute seeks to prohibit is an employer’s retaliating against an employee after the employee takes some action in pursuit of a workers’ compensation claim. This is the entire essence of the statutory proscription. Because the statute does not also proscribe employer conduct that may tend to discourage or prevent the employee from pursuing a claim in the first instance, it is clear that the legislature chose not to include such conduct. If the legislature had so intended, it would have been a simple matter for it to include language proscribing such conduct.
{¶ 48} The legislature, for example, could have added a few more words to the text of R.C. 4123.90, such as the following (proposed words in italics):
{¶ 49} “No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers’ compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer, or take any such action in order to prevent or discourage any employee from filing a claim or instituting, pursuing, or testifying in any such proceedings.”
{¶ 50} It may be good public policy to include an employer’s preemptive conduct within the statutory proscription, or there may be adverse consequences to such a policy that are not apparent on its face. This court has insufficient information available to it to make such a far-reaching policy choice. In any case, the legislature did not include such wording, which makes it clear that that the legislature intended not to regulate in this area beyond the conduct proscribed in R.C. 4123.90.
{¶ 51} Even if there were a gap that was unintended, and even if it were appropriate for this court to attempt to fill that gap, the majority’s chosen remedy is incongruous with the policy attempted to be vindicated. The majority injects a common-law tort action for what it terms “retaliation.” In reality, it is not “retaliation” that is being alleged by Sutton in this case. “Retaliation” involves some adverse action taken to punish some conduct already undertaken. The gravamen of the complaint here is that the employer took action to prevent or discourage the employee from pursuing a workers’ compensation claim in the first place — not to retaliate for having done so. It is, therefore, unclear how the court’s remedy for employer “retaliation” can be utilized to any proper effect when the conduct of the employee against which the employer is alleged to have retaliated had not yet occurred. Under the allegations in this case, Sutton had not yet taken any steps toward a workers’ compensation claim — not even the small step of stating to the employer that he intended to do so.
{¶ 52} The motive alleged by Sutton for Tomco’s firing him was to have Sutton removed from Tomco’s roster before he applied for workers’ compensation *167 benefits. On the record before us, it is not clear how the termination of Sutton’s employment would benefit Torneo. Sutton asserts that Tomco’s purpose in discharging him was to “preclude [his] Workers Compensation injury claim and higher Workers Compensation premiums.” But this claim lacks any basis in reality because whatever workers’ compensation benefits may be awarded to a claimant who was employed when he was injured on the job will either (1) become a part of the employer’s experience rating for calculation of its future workers’ compensation premium, if the employer is a state-fund employer, or (2) be paid directly by the employer, if the employer is a self-insuring employer. This result obtains whether the employee remains employed by the employer at the time of filing a claim or not. Consequently, this motive alleged by Sutton as Tomco’s reason for his termination appears to be nonsensical.
Jeffrey M. Silverstein & Associates, Jeffrey M. Silverstein, and Jason P. Matthews, for appellee.
J. Hollingsworth & Associates, L.L.C., and Jonathan Hollingsworth, for appellant.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Barton Bixenstine, and Josephine S. Noble, urging reversal for amicus curiae Ohio Management Lawyers Association.
{¶ 53} Furthermore, the termination of an employee simply because the employee is injured on the job will not have the effect of discouraging the employee from filing for workers’ compensation benefits. Instead, it is almost certain to have the opposite effect: it will strongly motivate the employee to file a claim.
{¶ 54} Finally, this matter was decided on a Civ.R. 12(C) motion for judgment on the pleadings, so there is not even an evidentiary record upon which this court may reliably base its leap into the unknown.
{¶ 55} In summary, I express concern because the court today injects common-law principles into a wholly statutory workers’ compensation system, finds a gap in the existing statute where none exists, and institutes a remedy incongruous with the wrongful conduct alleged.
{¶ 56} Although the court has made a significant effort to narrow the scope of its decision expanding the tort of wrongful termination into the workers’ compensation arena, I must respectfully dissent because I believe that the decision by the majority, although well intentioned, rests on foundations that are seriously flawed.
Lanzinger, J., concurs in the foregoing opinion.
*168 The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amicus curiae Ohio Employment Lawyers Association.
Giorgianni Law, L.L.C., and Paul Giorgianni, urging affirmance for amicus curiae Ohio Association for Justice.